## Haverstick *versus* Sipe.

In this state, the grant of an easement for light and air is not implied from the fact that such a privilege has been long enjoyed.

Nor is a contract for such a privilege implied, on the sale of a house and lot, from the character of the improvements on the lot sold and the adjoining lots.

The advantage which one man derives by obtaining light and air over the ground of another, is not an adverse privilege; and no implication of a grant being necessary to account for it, none arises from the fact of enjoyment.

ERROR to the Common Pleas of *Cumberland county*.

This was an action on the case by Samuel W. Haverstick against David Sipe, for erecting a fence whereby the windows of the plaintiff's house were obstructed; and for making a sink so near to the plaintiff's wall that the contents thereof penetrated into his premises. The plaintiff obtained a verdict for the latter injury; but under the instruction of the court there was a verdict for the defendant, in respect to the stopping of the plaintiff's lights, which was the only matter before this court.

The plaintiff and defendant owned and occupied different moieties of what was originally the same lot; the defendant being the owner of the northern half of the lot, and the plaintiff of the southern half. Both parties claimed under James Given, who, as early as 1807, erected the houses occupied by the respective parties. The back building on the part now owned by the plaintiff, fronted south, and all the doors, with eighteen windows, opened on that side. It had an open space of about twenty feet on that side, between it and the next building on the south. On the north side, a number of windows also opened, on the part of the lot now owned by the defendant. On the defendant's part of the lot there were also erected a back building, the doors and windows of which fronted the plaintiff's lot.

James Given continued the owner of both properties until the 16th May 1836, when he conveyed them to Elizabeth D. Ridgely. On the 26th March 1837, Elizabeth D. Ridgely, then intermarried with one Sangston, with her husband, conveyed the northern half of the lot to John Cornman, who, on the 30th November 1839, conveyed the same to Rufus E. Shepley; and on the 30th March 1854, Shepley conveyed to Sipe the defendant.

On the 1st April 1852, the heirs at law of Mrs. Sangston, then deceased, conveyed the residue of the lot to Haverstick, the plaintiff.

In 1855, the defendant tore down his back building, and rebuilt it, turning its front to the north, and leaving an alley three feet in width, between his back building and that of the defendant. And in 1858, having suffered much annoyance from the

[Haverstick *v.* Sipe.]

window shutters of the defendant being left standing at right angles to the wall so as to obstruct the alley; from the defendant's family throwing dirt from those windows into this alley, and thereby rendering it extremely offensive; and from these back windows being used by the defendant's family for the purpose of overlooking and watching all that passed on the plaintiff's premises; he erected a close board fence within two or three inches of the defendant's back building, but wholly on his own ground, whereby the windows on the north side of the defendant's preperty were entirely closed up and obstructed—and this was the injury complained of.

On the trial, the plaintiff's counsel requested the court to charge that—"If the jury believe that, as early as 1807, the respective houses of the plaintiff and defendant were built, with back buildings to each, with windows on the north side of the one and south side of the other, facing each other, and that the ownership of both was in James Given until the 16th May 1836, when he conveyed both to Eliza D. Ridgely, who continued to own both till the 26th March 1839, when she conveyed to John Cornman, and that he and Miss Eliza D. Ridgely then continued to occupy and enjoy them as they had been originally built and occupied until the 30th November 1849, when Cornman conveyed to Rufus E. Shepley, who continued to occupy and enjoy the same as the said houses had been originally built; and that Miss Eliza D. Ridgely continued to occupy and enjoy her part of the lot as it had been originally built, until she died in 1851, and that her heirs so enjoyed it until the 1st April 1852, when they conveyed to the present plaintiff, and that then he and Rufus E. Shepley continued to occupy and enjoy the said houses according to their respective titles until and as long as Mr. Shepley owned the part now belonging to Mr. Sipe, and that this state of ownership, occupancy, and use of the houses and back buildings of Mr. Haverstick continued uninterrupted until the 10th July 1858, at which time the defendant barricaded and shut up the windows of the plaintiff, he is entitled to recover in this action."

To this point, the court below (GRAHAM, P. J.) answered:— "We cannot answer this point as requested. The facts recited in this point may all exist and be as there recited, and yet the plaintiff may not be entitled to recover."

The following points were presented by the defendant:—

1. That a right by prescription or prior occupancy to ancient lights or windows does not exist in Pennsylvania; as between different owners of adjoining properties there must be a special agreement or grant, and it is not presumed from lapse of time.

Answer.—"We answer this in the affirmative."

2. The title to the property of plaintiff and defendant being in Mrs. Sangston in 1836, and she and her husband having conveyed

[Haverstick *v.* Sipe.]

the one now owned by the defendant to John Cornman in 1839, by courses and distances designated upon the ground, without any reservation of light for the windows of the house of plaintiff, then owned by her, he cannot now claim from the defendant ancient window light in derogation of the grant from Mrs. Sangston to him, without any reservation of such lights, long prior to her conveyance to him.

Answer.—" We answer this in the affirmative."

3. The whole structure complained of by the plaintiff being on the ground of the defendant, if the jury believe he erected it for the purpose of protecting his premises from annoyances and nuisances, or dirt being thrown upon them from the plaintiff's windows, all malice is repelled, and the plaintiff having failed to show any, the plaintiff cannot recover on either the first or second counts of his declaration.

Answer.—" If the defendant erected the structure complained of for the purpose of protecting himself in the proper and comfortable enjoyment of his property, and preventing nuisances and annoyances, and not maliciously and improperly to injure his neighbour without benefiting himself, then the plaintiff cannot recover on the first and second counts in the declaration."

5. No grant of ancient light can be presumed short of twenty years' enjoyment even in England; and the defendant having obtained his right from Mrs. Sangston, the then owner, in 1839, and plaintiff his, from the same owner, in 1852–3, a period less than twenty years, he cannot recover on the first and second counts in his declaration, unless he proves a grant for the privilege claimed, which has not been done.

Answer.—" We have before said that plaintiff cannot recover on the 1st and 2d counts, if the defendant erected the structure for his own protection in the proper enjoyment of his property. If he did not do so, but merely to annoy and injure the plaintiff, then the plaintiff may recover."

To these instructions the plaintiff excepted, and here assigned the same for error.

*Watts & Parker,* for the plaintiff in error.

*Hepburn* and *Miller,* for the defendant in error, cited 2 *Wheaton's Selw. N. P.* 1137; *Id.* 1133; Garritt *v.* Sharp, 3 *Ad. & Ellis* 330; Hoy *v.* Sterrett, 2 *Watts* 331; Wheatley *v.* Baugh, 1 *Casey* 532–3; 13 *Shep.* 436; 19 *Wend.* 309; 10 *Ala.* 63; 4 *Am. L. J.* 6; *Price on Lim.* 327; Berry *v.* Pope, *Cro. Eliz.* 118; Hazlett *v.* Powell, 6 *Casey* 296; Maynard *v.* Esher, 5 *Harris* 222; 3 *Kent's Com.* 448, n.; *Ang. on Lim.* 473.

The opinion of the court was delivered by

[Haverstick *v.* Sipe.]

LOWRIE, C. J.—It has never been considered, in this state, that a contract for the privilege of light and air over another man's ground could be implied from the fact that such a privilege has been long enjoyed; or that, on a sale of a house and lot, such a contract could be implied from the character of the improvements on the lot sold, and the adjoining lots.

There is a sort of necessity for such an implication relative to other apparent easements, such as roads and alleys, in order to account for a use of another man's land that would otherwise be a wrongful encroachment; and the implication is easily framed or defined, for it appears on the ground.

But how can we define an easement for light and air by implication, without arresting all change in the style of buildings, all enlargement of a man's house according to the demands of a growing or improving family? A purchaser of a house in a crowded town never supposes that his neighbour will have a right to prevent him from changing the form of it according to his taste, while he may be entirely willing to act upon the duty of good neighbourhood in any alterations he may make. And he never supposes that his next-door neighbour is bound any otherwise.

The advantage which one man derives by obtaining light and air over the ground of another, is no adverse privilege as it ordinarily appears; for it is no sort of encroachment on the land of another, or interference with his enjoyment of it, and he could not, without churlishness, protest against it, when used with neighbourly propriety. The enjoyment of such a privilege needs no implication of a grant to account for it, and none is made.

We would not say that there can be no possible case in which such an implication can arise; but we are satisfied that none is necessary or proper in this case.

Other points are raised by the case, but this is the only one insisted on.

Judgment affirmed and record remitted.