ANDREW J. LYNCH

*vs.*

WILLIAM L. HILL, his servants and agents.

*Sussex, May* 15, 1939.

*Houston Wilson,* for complainant.

*Isaac D. Short, 2nd,* for defendant.

THE CHANCELLOR: The case is before this court on a general demurrer to the complainant's bill, and from its allegations the important question to be determined is whether the grant of a right to enjoy light and air, through windows overlooking the lands of an adjoining owner, will be presumed in this State, after the expiration of twenty years' unobstructed enjoyment and user.

Chancellor Bates, in an able opinion, answered that question in the affirmative in *Clawson v. Primrose* (4 *Del. Ch.* 643) decided in 1873. That case has not been expressly overruled, but it, apparently, did not settle the controversy in the minds of either the Bench or the Bar of the State. There have been attempts to raise the same question several times since 1873, but the final decisions in those cases have always been based on other grounds, though *Clawson v. Primrose* was severely criticized by Chancellor Saulsbury, in *Hulley v. Security Trust & Safe Deposit Co.,* (5 *Del. Ch.* 578) ; and in *Bringhurst v. O'Donnell,* (14 *Del.*

*Ch.* 225, 124 *A.* 795) Chancellor Wolcott stated that it stood practically, if not entirely, alone in American jurisprudence. There were earlier cases in other states reaching the same conclusion that was reached in *Clawson v. Primrose,* but they have been overruled by later decisions in the same jurisdictions. This is conceded by the complainant's solicitor. He, also, admits that, in order for an injunction to issue in a case of this nature, it must be alleged, and ultimately proved that the contemplated act of the defendant will not cause mere trivial or slight damage to the complainant, but it must appear that by obstructing the windows in his building, and thereby cutting off the light and air which he has long enjoyed therefrom, its usefulness as a law office will be materially and injuriously affected. *Clawson v. Primrose,* 4 *Del. Ch.* 643; *Hulley v. Security Trust Co.,* 5 *Del. Ch.* 578, *supra.* Serious and irreparable damage is alleged, and it is not claimed that the bill does not set out sufficient facts to justify that conclusion. A consideration of the basic question, therefore, seems necessary.

*Article* 25 *of the Constitution of* 1776 provided:

"The common law of England * * * shall remain in force, unless * * * altered by a future law of the legislature; such parts only excepted as are repugnant to the rights and privileges contained in this constitution, and the declaration of rights, &c., agreed to by this convention."

In *Clawson v. Primrose,* 4 *Del. Ch.* 643, *supra,* Chancellor Bates said:

"The provisions of our State Constitution of 1776, adopting for the new State Government, the body of the common law, and in part the statutes of England, is the same in substance with the declaration of the Congress of 1774 of what had before been held to be the force of the English common and statutory law in the Colonies; and the obvious purpose and effect of the 25th Article of the Constitution was to give to the common law in this State by constitutional adoption, the same force under the new Government which in their previous political condition it had by virtue of their colonial relationship to the mother country." See, also, 1 *Story on the Const.,* 158, *note; Hulley v. Security Trust, etc., Co.,* 5 *Del. Ch.* 578, *supra.*

In the same case, Chancellor Bates, referring to the Constitution of 1776, also, said:

"By the common law was of course meant the common law of England as it then stood, so far as it was applicable to the circumstances of the people, and was not repugnant, as the constitution expresses it, 'to the rights and privileges contained in that instrument and the declaration of rights'" included in it.

It must be conceded that in England, at a very early date, a right to light and air through ancient windows could be acquired by prescription, or by an enjoyment of the alleged right since the beginning of legal memory. *Clawson v. Primrose, 4 Del. Ch.* 643; 46 *Am. Dec.* 578, *note.* It must, also, be conceded that at a later period, though prior to 1776, a grant of the right could be, at least, presumed after a long uninterrupted enjoyment of light and air through the same windows.

In view of the fact that no positive acts of aggression were ever committed on the lands of the adjoining owner, over which the right was claimed, the rule seems somewhat anomalous, but it was, nevertheless, a well established rule at common law that an easement to the enjoyment of light and air could be acquired if windows remained open and unobstructed for the prescribed time. The required uninterrupted time of user and enjoyment, from which a grant could be presumed, varied at various periods in English legal history. The *Statute of Westminster 2nd, Chapter* 46, enacted in the third year of Edward I, fixed the coronation of Richard I as the period of legal memory, within which a seisin must be proved, in order to maintain a writ of right. By analogy, the same period of time was subsequently applied by the English courts to the acquisition of incorporeal rights by prescription, including the right to light and air through the uninterrupted user of windows overlooking the lands of another. At a later date, in analogy to the *Statute of* 32 *Henry VIII*, which fixed a statutory period of limitations for the issuance of writs of right, sixty years' possession was considered sufficient evidence of enjoyment from

the time of *Richard I* to raise a presumption of a grant, unless rebutted by evidence that user commenced subsequent to that date. *Clawson v. Primrose, 4 Del. Ch.* 643; 46 *Am. Dec.* 578, *note.* It seems, however, that, nominally at least, the reign of Richard I still continued to be the beginning of legal memory for the purpose of acquiring the absolute right to the enjoyment of light and air through ancient windows; but as such proof could rarely be rebutted, for all practical purposes, sixty years' user, or enjoyment, became the usual requisite period for the acquisition of such an easement over the lands of an adjoining owner.

The *Statute of* 21 *James I*, the title of which was "An Act for a Limitation of Actions and for avoiding suits in law," was enacted in 1623, and limited rights of entry to twenty years. In England, in analogy to that statute, a grant of the right to enjoy light and air through windows which had been open and unobstructed for twenty years was finally presumed against an adjoining owner, but the change from the required enjoyment of at least sixty years to the lesser period of twenty years was gradual, and not immediate.

There are dicta in English decisions, prior to 1776, to the effect that a grant by the adjoining owner of an easement to enjoy reasonable and necessary light and air from and over his premises would be presumed after twenty years' unobstructed user (*Lewis v. Price,* 2 *Wm. Saund.* 175, *note,* 85 *Eng. Repr.* 926, *note,* decided in 1761; see, also, *Dougal v. Wilson,* 2 *Wm. Saund.* 175, *note,* 85 *Eng. Repr.* 926, *note,* decided in 1769); but the precise question was not squarely raised and decided in England until 1789. See *Darwin v. Upton,* 2 *Wm. Saund.* 175, *note,* 85 *Eng. Repr.* 927. Chancellor Bates conceded this, but said that the principles with respect to easements in general had been decided in England prior to 1776, and that *Darwin v. Upton* merely declared previous settled principles and applied them to particular facts.

In *Hayden v. Dutcher*, 31 *N. J. Eq.* 217, 218, the court, in commenting on *Clawson v. Primrose*, pointed out, however, that the fact that the twenty year rule had been applied to easements in general, prior to the decision of *Darwin v. Upton*, did not necessarily show that the same rule would, also, be applied to easements, relating to light and air. Regardless of what might perhaps have been expected in view of prior decisions, there seems to be merit in that criticism. But in any event, as Chancellor Saulsbury pointed out in *Hulley v. Security Trust, etc., Company*, (5 *Del. Ch.* 578, *supra*), when the *Statute of* 21 *James I* was enacted, what is now the State of Delaware had not even been settled, and that territory did not come into the possession of England until about twenty years later. That statute, therefore, never applied here, and, when we separated from England in 1776, could not have been relied on by analogy to shorten to twenty years the prior required time within which the grant of an easement, relating to light and air, could be presumed. *Hulley v. Security Trust, etc., Co.*, 5 *Del. Ch.* 578, *supra*.

In *Volume* 1, *Laws of Delaware, Chapter* 22, *page* 64, enacted in 1719, there is a recital of the well known general rule that "Acts of Parliament have been adjudged not to extend to these plantations, except when they are particularly named in the body of such acts * * *." In fact, at an early date, our Colonial Assembly passed an Act entitled "An Act for the Limitations of Actions." The precise provisions of that Act do not appear in the early volumes of the Laws of Delaware, but it was enacted in the 15th year of the reign of George II, and about the year 1742. See *Chapter* 86 *A, Vol.* 1, *Laws of Delaware*; see, also, *Hulley v. Security Trust, etc., Co.*, 5 *Del. Ch.* 578. That Act was, however, supplemented and repealed by *Section* 8 of an Act entitled "A Supplement to an Act entitled An Act for the Limitation of Actions and Proving Accounts against the Estates of Persons dying within this Government," which was passed about the year 1773, in the 12th year of the reign of George

III. *Vol.* 1, *Laws of Del., Chapt.* 216, *p.* 524. Other supplements to the same Act are listed in a note on page 1031, *Volume* 2 *Laws of Delaware.* See, also, *Revised Code of* 1829, *p.* 396. Some of the provisions of the Supplementary Act of 1773 were somewhat similar to the *Statute of* 21 *James I,* but no reference, whatever, was made to that statute. See *Hulley v. Security Trust, etc., Co.,* 5 *Del. Ch.* 578.

In *Sobolewski v. German,* 2 *W. W. Harr.* (32 *Del.*) 540, 127 *A.* 49, the court pointed out that in 1808 a list of English statutes, applying in Pennsylvania, appeared in 3 *Bin.* 595-626, and that owing to the early connection between Pennsylvania and Delaware that list would, perhaps, be helpful in determining what early English statutes applied here. The fact that 21 *James I* does not appear in that list, therefore, seems significant. In view of all the circumstances, it seems apparent that no decisions of the courts of England, made in analogy to the *Statute of* 21 *James I,* could have had any effect in this State at the time of the enactment of the promulgation of the Constitution of September 20, 1776.

There are cases in the early Delaware reports which hold that grants of the particular easements involved would be presumed after the expiration of twenty years' uninterrupted user and enjoyment of the alleged right, but there is nothing to indicate that they were based on the English *Statute of* 21 *James I. Delaney v. Boston,* 2 *Har.* 489; *Huggins v. McGregor,* 1 *Har.* 447; *Derrickson v. Springer,* 5 *Har.* 21. The twenty year rule was applied in *Delaney v. Boston,* 2 *Har.* 489, but in the same case, the court said:

"It was remarked in the argument, that it was strange how a title by prescription should exist in this country. Prescription in England can only be from the time of legal memory, i. e. from the days of Richard II; a time to which we cannot in this country go back. But yet the decisions in this country have established a quasi prescriptive right, that is, the courts have said forty years enjoyment may be taken as evidence of a prescriptive right, a right founded on the presumption of existence back to the time of legal memory."

It may be that the twenty year rule in this country is, by analogy, based on the early local statutes above referred to, but, as we have already pointed out, there is nothing to indicate that that rule is, in any way, affected by the *Statute of* 21 *James I.*

But, after all, the most important question to be determined is whether the law of England, relating to ancient lights, was applicable to the people of this country, including the State of Delaware, at the time of the adoption of the Constitution of 1776.

It seems difficult to escape the conclusion that the English rule was wholly unsuited to our conditions at that time and would necessarily cause mischievous consequences in our growing cities, towns and villages. In this connection, Chancellor Kent aptly says:

"This common law right of prescription, in favor of ancient lights, does not reasonably or equitably apply, and it is not the presumed intention of the owners of city lots that it should ever be applied to buildings on narrow lots in the rapidly growing cities in this country." 3 *Kent Com.,* 446, *note.*

The reported cases are almost unanimously in accord with this conclusion. *Parker v. Foote,* 19 *Wend.* (*N. Y.*) 309; *Hayden v. Dutcher,* 31 *N. J. Eq.* 217; *Cherry v. Stein,* 11 *Md.* 1; *Rogers v. Sawin,* 10 *Gray* 376, 76 *Mass.* 376; *Haverstick v. Sipe,* 33 *Pa.* 368; see, also, *Hulley v. Security Trust, etc., Co.,* 5 *Del. Ch.* 578.

In *Haverstick v. Sipe, supra,* the court said:

"It has never been considered, in this state, that a contract for the privilege of light and air over another man's ground could be implied from the fact that such a privilege has been long enjoyed; or that, on a sale of a house and lot, such a contract could be implied from the character of the improvements on the lot sold, and the adjoining lots."

In fact, prior to the *Prescription Act of* 2 *and* 3 *William IV, Chapter* 71, it seems that, by custom, the general English rule did not apply to ancient houses, or to houses erected on ancient foundations, in either of the populous cities of Lon-

don or York. *Truscott v. Masters & Wardens of the Mer.*
*Tailor Co.*, 11 *Exch.* 854, 156 *Eng. Repr.* 1079; *Hughes v.*
*Keme, Yelverton,* 216, 80 *Eng. Repr.* 141; *Wynstanley v.*
*Lee,* 36 *Eng. Rep.* 643; see, also, *Rogers v. Sawin,* 10 *Gray*
376, 76 *Mass.* 376. The very language of the English *Pre-*
*scription Act* would seem to recognize the fact that, prior to
its enactment, the application of the old general rule might
be prevented by a contrary custom or usage. The reason
for this exception in England is akin to the reason why the
old general rule, formerly applied there, is not suitable to
the conditions of a new growing and populous country,
which contains many large cities and towns, where build-
ings are often necessarily erected on small lots.

The complainant's case is wholly based on *Clawson v.*
*Primrose,* (4 *Del. Ch.* 643, *supra*). The previous statement
made by Chief Justice Gilpin, in *Pierce v. Lemon* (2 *Houst.*
519), was a mere dictum not necessary to the decision of the
case before him. Carefully considered cases in this court
should not be disregarded without good reason, but as I
have reached the conclusion that *Clawson v. Primrose* was
incorrectly decided and would not be followed by the Su-
preme Court I think it should be overruled by this court in
order that the expense of an appeal can be saved.

The defendant's general demurrer to the complainant's
bill is, therefore, sustained, and a decree will be entered
accordingly.