114 So.2d 357 (1959)
FONTAINEBLEAU HOTEL CORP., a Florida corporation, and Charnofree Corporation, a Florida corporation, Appellants,
v.
FORTY-FIVE TWENTY-FIVE, INC., a Florida corporation, Appellee.
No. 59-450.
District Court of Appeal of Florida. Third District.
August 27, 1959.
Rehearing Denied September 23, 1959.
*358 Sibley, Grusmark, Barkdull & King, Miami Beach, for appellants.
Anderson & Nadeau, Miami, for appellee.
PER CURIAM.
This is an interlocutory appeal from an order temporarily enjoining the appellants from continuing with the construction of a fourteen-story addition to the Fontainebleau Hotel, owned and operated by the appellants. Appellee, plaintiff below, owns the Eden Roc Hotel, which was constructed in 1955, about a year after the Fontainebleau, and adjoins the Fontainebleau on the north. Both are luxury hotels, facing the Atlantic Ocean. The proposed addition to the Fontainebleau is being constructed twenty feet from its north property line, 130 feet from the mean high water mark of the Atlantic Ocean, and 76 feet 8 inches from the ocean bulkhead line. The 14-story tower will extend 160 feet above grade in height and is 416 feet long from east to west. During the winter months, from around two o'clock in the afternoon for the remainder of the day, the shadow of the addition will extend over the cabana, swimming pool, and sunbathing areas of the Eden Roc, which are located in the southern portion of its property.
In this action, plaintiff-appellee sought to enjoin the defendants-appellants from proceeding with the construction of the addition to the Fontainebleau (it appears to have been roughly eight stories high at the time suit was filed), alleging that the construction would interfere with the light and air on the beach in front of the Eden Roc and cast a shadow of such size as to render the beach wholly unfitted for the use and enjoyment of its guests, to the irreparable injury of the plaintiff; further, that the construction of such addition on the north side of defendants' property, rather than the south side, was actuated by malice and ill will on the part of the defendants' president toward the plaintiff's president; and that the construction was in violation of a building ordinance requiring a 100-foot setback from the ocean. It was also alleged that the construction would interfere with the easements of light and air enjoyed by plaintiff and its predecessors in title for more than twenty years and "impliedly granted by virtue of the acts of the plaintiff's predecessors in title, as well as under the common law and the express recognition of such rights by virtue of Chapter 9837, Laws of Florida 1923 * * *." Some attempt was also made to allege an easement by implication in favor of the plaintiff's property, as the dominant, and against the defendants' property, as the servient, tenement.
*359 The defendants' answer denied the material allegations of the complaint, pleaded laches and estoppel by judgment.
The chancellor heard considerable testimony on the issues made by the complaint and the answer and, as noted, entered a temporary injunction restraining the defendants from continuing with the construction of the addition. His reason for so doing was stated by him, in a memorandum opinion, as follows:
"In granting the temporary injunction in this case the Court wishes to make several things very clear. The ruling is not based on any alleged presumptive title nor prescriptive right of the plaintiff to light and air nor is it based on any deed restrictions nor recorded plats in the title of the plaintiff nor of the defendant nor of any plat of record. It is not based on any zoning ordinance nor on any provision of the building code of the City of Miami Beach nor on the decision of any court, nisi prius or appellate. It is based solely on the proposition that no one has a right to use his property to the injury of another. In this case it is clear from the evidence that the proposed use by the Fontainebleau will materially damage the Eden Roc. There is evidence indicating that the construction of the proposed annex by the Fontainebleau is malicious or deliberate for the purpose of injuring the Eden Roc, but it is scarcely sufficient, standing alone, to afford a basis for equitable relief."
This is indeed a novel application of the maxim sic utere tuo ut alienum non laedas. This maxim does not mean that one must never use his own property in such a way as to do any injury to his neighbor. Beckman v. Marshall, Fla. 1956, 85 So.2d 552. It means only that one must use his property so as not to injure the lawful rights of another. Cason v. Florida Power Co., 74 Fla. 1, 76 So. 535, L.R.A. 1918A, 1034. In Reaver v. Martin Theatres, Fla. 1951, 52 So.2d 682, 683, 25 A.L.R.2d 1451, under this maxim, it was stated that "it is well settled that a property owner may put his own property to any reasonable and lawful use, so long as he does not thereby deprive the adjoining landowner of any right of enjoyment of his property which is recognized and protected by law, and so long as his use is not such a one as the law will pronounce a nuisance." [Emphasis supplied.]
No American decision has been cited, and independent research has revealed none, in which it has been held that  in the absence of some contractual or statutory obligation  a landowner has a legal right to the free flow of light and air across the adjoining land of his neighbor. Even at common law, the landowner had no legal right, in the absence of an easement or uninterrupted use and enjoyment for a period of 20 years, to unobstructed light and air from the adjoining land. Blumberg v. Weiss, 1941, 129 N.J. Eq. 34, 17 A.2d 823; 1 Am.Jur., Adjoining Landowners, § 51. And the English doctrine of "ancient lights" has been unanimously repudiated in this country. 1 Am.Jur., Adjoining Landowners, § 49, p. 533; Lynch v. Hill, 1939, 24 Del. Ch. 86, 6 A.2d 614, overruling Clawson v. Primrose, 4 Del. Ch. 643.
There being, then, no legal right to the free flow of light and air from the adjoining land, it is universally held that where a structure serves a useful and beneficial purpose, it does not give rise to a cause of action, either for damages or for an injunction under the maxim sic utere tuo ut alienum non laedas, even though it causes injury to another by cutting off the light and air and interfering with the view that would otherwise be available over adjoining land in its natural state, regardless of the fact that the structure may have been erected partly for spite. See the cases collected in the annotation in 133 A.L.R. at pp. 701 et seq.; 1 Am.Jur., Adjoining Landowners, § 54, p. 536; Taliaferro v. Salyer, *360 1958, 162 Cal. App.2d 685, 328 P.2d 799; Musumeci v. Leonardo, 1950, 77 R.I. 255, 75 A.2d 175; Harrison v. Langlinais, Tex. Civ.App. 1958, 312 S.W.2d 286; Granberry v. Jones, 1949, 188 Tenn. 51, 216 S.W.2d 721; Letts v. Kessler, 1896, 54 Ohio St. 73, 42 N.E. 765; Kulbitsky v. Zimnoch, 1950, 196 Md. 504, 77 A.2d 14; Southern Advertising Co. v. Sherman, Tenn. App. 1957, 308 S.W.2d 491.
We see no reason for departing from this universal rule. If, as contended on behalf of plaintiff, public policy demands that a landowner in the Miami Beach area refrain from constructing buildings on his premises that will cast a shadow on the adjoining premises, an amendment of its comprehensive planning and zoning ordinance, applicable to the public as a whole, is the means by which such purpose should be achieved. (No opinion is expressed here as to the validity of such an ordinance, if one should be enacted pursuant to the requirements of law. Cf. City of Miami Beach v. State ex rel. Fontainebleau Hotel Corp., Fla.App. 1959, 108 So.2d 614, 619; certiorari denied, Fla. 1959, 111 So.2d 437.) But to change the universal rule  and the custom followed in this state since its inception  that adjoining landowners have an equal right under the law to build to the line of their respective tracts and to such a height as is desired by them (in the absence, of course, of building restrictions or regulations) amounts, in our opinion, to judicial legislation. As stated in Musumeci v. Leonardo, supra [77 R.I. 255, 75 A.2d 177], "So use your own as not to injure another's property is, indeed, a sound and salutary principle for the promotion of justice, but it may not and should not be applied so as gratuitously to confer upon an adjacent property owner incorporeal rights incidental to his ownership of land which the law does not sanction."
We have also considered whether the order here reviewed may be sustained upon any other reasoning, conformable to and consistent with the pleadings, regardless of the erroneous reasoning upon which the order was actually based. See McGregor v. Provident Trust Co. of Philadelphia, 119 Fla. 718, 162 So. 323. We have concluded that it cannot.
The record affirmatively shows that no statutory basis for the right sought to be enforced by plaintiff exists. The so-called Shadow Ordinance enacted by the City of Miami Beach at plaintiff's behest was held invalid in City of Miami Beach v. State ex rel. Fontainebleau Hotel Corp., supra. It also affirmatively appears that there is no possible basis for holding that plaintiff has an easement for light and air, either express or implied, across defendants' property, nor any prescriptive right thereto  even if it be assumed, arguendo, that the common-law right of prescription as to "ancient lights" is in effect in this state. And from what we have said heretofore in this opinion, it is perhaps superfluous to add that we have no desire to dissent from the unanimous holding in this country repudiating the English doctrine of ancient lights.
The only other possible basis  and, in fact, the only one insisted upon by plaintiff in its brief filed here, other than its reliance upon the law of private nuisance as expressed in the maxim sic utere tuo ut alienum non laedas  for the order here reviewed is the alleged violation by defendants of the setback line prescribed by ordinance. The plaintiff argues that the ordinance applicable to the Use District in which plaintiff's and defendants' properties are located, prescribing "a front yard having a depth of not less than one hundred (100) feet, measured from the ocean, * * *," should be and has been interpreted by the City's zoning inspector as requiring a setback of 100 feet from an established ocean bulkhead line. As noted above, the addition to the Fontainebleau is set back only 76 feet 8 inches from the ocean bulkhead line, although it is 136 feet from the ocean measured from the mean high water mark.
*361 While the chancellor did not decide the question of whether the setback ordinance had been violated, it is our view that, even if there was such a violation, the plaintiff would have no cause of action against the defendants based on such violation. The application of simple mathematics to the sun studies filed in evidence by plaintiff in support of its claim demonstrates conclusively that to move the existing structure back some 23 feet from the ocean would make no appreciable difference in the problem which is the subject of this controversy. Cf. Taliaferro v. Salyer, supra. The construction of the 14-story addition is proceeding under a permit issued by the city pursuant to the mandate of this court in City of Miami Beach v. State ex rel. Fontainebleau Hotel Corp., supra, which permit authorizes completion of the 14-story addition according to a plan showing a 76-foot setback from the ocean bulkhead line. Moreover, the plaintiff's objection to the distance of the structure from the ocean appears to have been made for the first time in the instant suit, which was filed almost a year after the beginning of the construction of the addition, at a time when it was roughly eight stories in height, representing the expenditure by defendants of several million dollars. In these circumstances, it is our view that the plaintiff has stated no cause of action for equitable relief based on the violation of the ordinance  assuming, arguendo, that there has been a violation.
Since it affirmatively appears that the plaintiff has not established a cause of action against the defendants by reason of the structure here in question, the order granting a temporary injunction should be and it is hereby reversed with directions to dismiss the complaint.
Reversed with directions.
HORTON, C.J., and CARROLL, CHAS., J., and CABOT, TED, Associate Judge concur.