705 So.2d 1013 (1998)
LEE COUNTY, Florida, a political subdivision of the State of Florida, Appellant,
v.
Edward C. KIESEL and Lorraine T. Kiesel, husband and wife, Appellees.
No. 96-05137.
District Court of Appeal of Florida, Second District.
February 6, 1998.
*1014 James G. Yaeger, Lee County Attorney, and John J. Renner, Assistant County Attorney, Fort Myers, for Appellant.
Kenneth A. Jones of Peper, Martin, Jensen, Maichel and Hetlage, Fort Myers, for Appellee.
NORTHCUTT, Judge.
We affirm a partial final judgment in this inverse condemnation action brought by Edward and Lorraine Kiesel against Lee County. The trial court found that the Kiesels were entitled to compensation because a bridge the county built over the Caloosahatchee River obstructed the Kiesels' riparian right of view. The court gave the county the option either to proceed with a "quick take" procedure pursuant to Chapter 74, Florida Statutes (1995), or to pay the Kiesels after the entry of a final judgment assessing full compensation for the taking and any damages to the remainder. The county appealed.[1]
Evidence at the bench trial reflected that the Kiesels purchased their riverfront property in 1987 for $160,000 and constructed a home at a cost of $265,000. After the home was built, the county proceeded with the alignment and construction of the bridge. The completed bridge makes landfall on property adjacent to the Kiesel home; none of the Kiesels' property was condemned for the construction. The bridge is not aligned perpendicularly to the shoreline, but extends over the river at an angle, reaching across the view from the Kiesels' property. The Kiesels' experts testified that the property previously had a value of $650,000 to $659,000. The experts opined that after the bridge construction the market value of the property was $300,000. One expert directly attributed the loss in value to the bridge.
The trial court found that "[a]s a result of the angle at which the bridge is constructed across the front (river side) of the Kiesel property, it substantially and materially interferes with and disturbs the view across the waters of the Caloosahatchee River from *1015 the said property." The court concluded that "as a direct and proximate result of such substantial and material interference, the market value of the Kiesel property has substantially decreased, having been estimated by Plaintiffs' expert real estate appraisal witness as being in the range of $194,250 to $227,200."
We reject the county's argument that there was no physical taking here; that, since the bridge did not physically rest upon any of the Kiesel property itself, the Kiesels were entitled to compensation only if the bridge construction substantially ousted them from or deprived them of substantially all beneficial use of their property. That test would apply if this case involved a "regulatory taking", in which a land owner's use of his property had been restricted by government regulation. See, e.g., Florida Game and Fresh Water Fish Com'n v. Flotilla, Inc., 636 So.2d 761 (Fla. 2d DCA 1994). But this was not a regulatory taking. Rather, this case involved an actual physical intrusion to an appurtenant right of the Kiesels' property ownership. Cf. Palm Beach County v. Tessler, 538 So.2d 846, 849 (Fla.1989) (although none of property owner's land was physically taken, owner was entitled to compensation when retaining wall built by county caused a substantial loss of owner's appurtenant right of access to property.).
Owners of uplands along navigable waters enjoy common law riparian rights, one of which is the right to an unobstructed view over the water to the channel. These rights constitute property, which the government may not take or destroy without paying just compensation to the owners. See Thiesen v. Gulf, F. & A. Ry. Co., 75 Fla. 28, 78 So. 491 (1917); Padgett v. Central and Southern Florida Flood Control Dist., 178 So.2d 900 (Fla. 2d DCA 1965).
Shorelines do not often neatly parallel channels, and property lines are not always perpendicular to shorelines or channels. Consequently, it is impossible to devise a rule for every case that would define the physical parameters of the riparian right of view or establish what degree of intrusion would constitute an obstruction. In this regard, both parties rely on Hayes v. Bowman, 91 So.2d 795 (Fla.1957). The county cites Hayes because it affirmed the denial of an upland owner's action for an injunction against a private party's construction of a landfill that would interfere with the land owner's riparian right of view to the channel. The Kiesels cite Hayes because it recognized this particular property right, and described its breadth in general terms as a case by case factual determination.
We ... hold that the common law riparian rights to an unobstructed view and access to the Channel over the foreshore across the waters toward the Channel must be recognized over an area as near `as practicable' in the direction of the Channel so as to distribute equitably the submerged lands between the upland and the Channel. This rule means that each case necessarily must turn on the factual circumstances there presented and no geometric theorem can be formulated to govern all cases. An upland owner must in all cases be permitted a direct, unobstructed view of the Channel and as well a direct, unobstructed means of ingress and egress over the foreshore and tidal waters to the Channel. If the exercise of these rights is prevented, the upland owner is entitled to relief.
* * * * * *
In making such `equitable distribution' the Court necessarily must give due consideration to the lay of the upland shore line, the direction of the Channel and the co-relative rights of adjoining upland owners.
91 So.2d at 801-02.
When affirming the denial of relief to the property owner, the Hayes court limited its ruling to the effect of the landfill specifically as proposed. The court observed that "[i]f the fill should be extended in a southerly direction so as to interrupt appellants' remaining view of or approach to the Channel, appellants might then have substantial grounds for complaint." 91 So.2d at 802. It thus appears that in Hayes the court applied to the riparian right of view a test that was similar to the one it later articulated with respect to a land owner's appurtenant right of access: to constitute a compensable obstruction of the riparian right of view, the *1016 interference must be more than a mere annoyance. It must substantially and materially obstruct the land owner's view to the channel. Cf. Tessler, 538 So.2d at 849 (loss of the most convenient access to property is not compensable where other suitable access continues to exist; loss of access is compensable when, considered in light of the remaining access, property owner's right of access has been substantially diminished).
In this case the trial court found that the bridge substantially and materially interfered with the Kiesels' riparian right of view. Our examination of the record confirms that this finding was amply supported by the evidence at trial. The Kiesels' expert testified that eighty per cent of their view to the channel was obstructed by the bridge. We agree with the trial court's conclusion that this was substantial and material.
Finding no merit in the county's other issues, we affirm the order under review.
CAMPBELL, A.C.J., and FRANK, J., concur.
NOTES
[1] We have jurisdiction because the nonfinal order determined the issue of liability in favor of the party seeking affirmative relief. Fla.R.App.P. 9.130(a)(3)(C)(iv).