KELLY, Judge.
 

 Michael and Barbara Mickel appeal from a final judgment granting permanent injunctive relief to their neighbors, Robert and Mary Norton. We reverse.
 

 This dispute arose when the Mickels installed a six-foot-high vinyl fence along the property line between their home and the Nortons’ home. The Nortons sued the Mickels alleging the fence constituted a private nuisance and that it violated their “riparian and littoral rights” by obstructing their view of the water. They sought a mandatory injunction requiring removal of the fence and a permanent injunction pro
 
 *1082
 
 hibiting the Mickels from placing any items on their property that would obstruct their view of the water.
 

 After a trial, the circuit court found in favor of the Nortons. The final judgment ordered the Mickels to remove the portion of the fence obstructing the Nortons’ view from their backyard across the Mickels’ property to the water. It also enjoined the placement of any items on the Mickels’ property that would interfere with the Nortons’ view. In making its decision, the trial court relied primarily on this court’s decision in
 
 Lee County v. Kiesel,
 
 705 So.2d 1013 (Fla. 2d DCA 1998). On appeal, the Mickels argue that
 
 Kiesel
 
 is inapplicable and that the Nortons have no legal right to a view of the water over the Mickels’ yard. We agree.
 

 In
 
 Kiesel,
 
 the owners of riverfront property prevailed in an inverse condemnation action against Lee County in connection with the county’s construction of a bridge that obstructed the Kiesels’ view of the river. This court affirmed the trial court’s award of compensation to the Kiesels based upon the supreme court’s holding in
 
 Hayes v. Bowman,
 
 91 So.2d 795 (Fla.1957), which recognizes the right of an upland property owner to an unobstructed view of adjoining waters.
 
 Id.
 
 at 799 (citing
 
 Thiesen v. Gulf, Fla. & Ala. Ry. Co.,
 
 75 Fla. 28, 78 So. 491 (1917)).
 

 We conclude that
 
 Kiesel
 
 is inapposite. The Kiesels’ home was situated on a riverfront lot. The bridge made landfall on property adjacent to the Kiesels’ home. The bridge was not aligned perpendicularly to the shoreline, but rather extended over the river at an angle. As a result, the bridge extended directly across the view from the Kiesel home to the river. Because the bridge was built at an angle, the trial court found that it “substantially and materially interferes with ... the view across the waters of the Caloosahatchee River from the ... property.”
 
 Kiesel,
 
 705 So.2d at 1014-15.
 

 The evidence in this case demonstrated that the Mickels’ fence did not interfere with the Nortons’ view of the water bordering their property. The parties’ homes are situated on adjoining pie-shaped lots on the tip of a small peninsula. The Mick-el lot is at the tip of the peninsula. The west side of the lot borders Alligator Bay and the Peace River; the rear of their home faces west toward the water. The Norton lot lies to the north of the Mickel lot. The north side of the Nortons’ lot faces the Sunrise Waterway, a manmade waterway that provides subdivision homeowners with access to Alligator Bay and the Peace River; the rear of their home faces north toward the water.
 

 In addition to the rights enjoyed by the public, private or “special” ripai'ian rights are vested in owners of land that extends to the high water mark of navigable waters:
 

 Those who own land extending to ordinary high-water mark of navigable waters are riparian holders who, by implication of law, and in addition to the rights of navigation, commerce, fishing, boating, etc., common to the public, have in general certain special rights in the use of waters
 
 opposite
 
 their holdings; among them being the right of access from the water to the riparian land and perhaps other easements allowed by law.
 

 Broward v. Mabry,
 
 58 Fla. 398, 50 So. 826, 830 (1909) (emphasis added). Among the “other easements allowed by law,” is the right to an unobstructed view over the adjoining water.
 
 See Thiesen,
 
 78 So. at 507.
 

 The difficulty with the Nortons’ contention that the Mickels’ fence interferes with their riparian right to an unobstructed view of the water is that it ig-
 
 *1083
 
 ñores the fact that their property and the Mickels’ property border different bodies of water. The Nortons still have a direct and unobstructed view of the Sunrise Waterway, which is the only body of water adjoining their lot. At most, the Nortons established that the fence obstructed then-view of the Mickels’ side yard and Alligator Bay which lies to the west on the other side of the Mickels’ lot. Because the Nor-tons’ lot is not bordered by Alligator Bay, they are not entitled to the private or special riparian rights incident to the ownership of land bordered by that body of water, including the right to a view of the bay. Accordingly, the trial court erred when it concluded they were entitled to relief.
 

 The Mickels also argue, and we agree, that the trial court erred when it ruled in favor of the Nortons on their nuisance claim. The Mickels contend that they had the fence installed for safety reasons to protect their privacy. At trial, Mr. Mickel testified that when he and his wife went into their backyard,
 

 Mr. Norton would either stand out there and watch us the entire time ... or he’d be out there telling us, shouting over at us or coming over and saying that he had a legal right to the view over and through our property; he had a legal right to tell us where we could plant and not plant.... We finally had enough of it.
 

 The Nortons alleged numerous reasons why the fence should be removed, including that the fence is out of place in the neighborhood, that it serves no useful purpose, that it diminishes the value of their property, that it was not constructed or installed in accordance with applicable instructions or requirements, and that it unreasonably denies them a view of the water from their backyard. However, there is no evidence in the record to support the Nortons’ claims.
 

 While it is unfortunate that the relations between these neighbors deteriorated to the point that the Mickels felt it necessary to install the fence to avoid confrontations with Mr. Norton, this does not support the conclusion that the fence is a nuisance. Even assuming the Nortons had a legal right to view the water by looking over the Mickels’ yard, we conclude the fence served a useful purpose by protecting the Mickels’ privacy and keeping trespassers from entering their property.
 
 See Calusa Golf, Inc. v. Carlson,
 
 464 So.2d 1271, 1271 (Fla. 3d DCA 1985) (finding that an injunction preventing the construction of a fence was inappropriate “even though a spiteful purpose may have partially motivated the construction” where the fence would “serve a useful purpose by protecting the [property] from trespass and vandalism”);
 
 Walden v. Van Harlingen,
 
 220 So.2d 670, 671 (Fla. 1st DCA 1969) (finding that the fact that a property owner desires to enclose his property from public view does not render the fence unlawful as a nuisance);
 
 Fontainebleau Hotel Corp. v. Forty-Five Twenty-Five, Inc.,
 
 114 So.2d 357, 359 (Fla. 3d DCA 1959) (stating that where a structure serves a useful and beneficial purpose it does not give rise to a cause of action regardless of the fact that it “may have been erected partly for spite”). Accordingly, we reverse.
 

 Reversed.
 

 WALLACE and CRENSHAW, JJ., Concur.