INDUSTRIAL TRUST COMPANY, a corporation of the State of Delaware, v. JOHN L. STIDHAM, MARY F. STIDHAM and CALVIN P. STIDHAM.

*(November* 24, 1942.)

RODNEY, J., sitting.

*Thomas Herlihy, Jr.,* for attachment creditors.

*Joseph Handler* for petitioner to intervene.

Superior Court for New Castle County, No. 47, January Term, 1941.

RODNEY, J., delivering the opinion of the Court:

From the foregoing statement two questions are presented for solution. (1) As to whether any claim held by Stidham was an assignable claim and legally assigned by the instrument relied on, and (2) whether, as a matter of fact, the alleged assignment was ever made as alleged by the intervenor, or whether it is a fraudulent claim now asserted to obtain priority over the attaching creditors.

1.  The assignment itself is unusual in form. It purports to have been made while an action at law was pending by Stidham against Diamond State Brewery. In express terms it does not purport to assign the chose in action but merely the amount of the judgment subsequently to be recovered. As will subsequently be pointed out, the assignment was kept secret, and no control over the litigation assumed by the assignee, and, indeed, no claim made under the assignment until many months after the rendition of judgment.

While the form of the assignment may be questionable, I prefer to think a bona fide assignment in the form the present one assumes would carry with it the chose in action sued on. The whole subject of assignments has undergone radical changes from the situation at common law, and clearly shows the effect of equitable principles. Originally, neither judgments nor choses in action were assignable at law, but modern authorities all hold that choses in action arising from contract not involving personal service may be assignable. See *Garford Motor Truck Co. v. Buckson,* 4 *W. W. Harr.* (*34 Del.*) 103, 143 A. 410. In *Black on Judgments,* p. 1399, it is said:

"The assignment of a cause of action founded on breach of contract, or of a verdict recovered in the suit, carries the

right to the judgment afterwards recovered or entered up."

See also 2 *Freeman on Judgments,* p. 2193; *Rufe v. Commercial Bank,* (4 *Cir.*) 99 F. 650; *Weire v. City of Davenport,* 11 *Iowa* 49, 77 *Am. Dec.* 132.

▮▮▮ The question of assignability largely depends upon the circumstances as to whether the cause of action would survive and pass to the personal representative.

▮▮▮ It is true that the assignment in this case grew out of an action brought in covenant and which sounded in damages. It was brought to recover damages for an unlawful discharge under a contract for personal service. While personal confidence may preclude the assignability of a contract for personal service, yet the uniform rule is that there is a plain and obvious distinction between the obligation of the work itself on the one hand, and the money or earnings resulting from such work. See *Neugebauer v. Anstrom,* 68 *N. D.* 684, 283 *N. W.* 74, at page 77; 4 *Am. Jur.* p. 240; 6 *C. J. S., Assignments,* § 15, p. 1060.

▮▮▮ As stated by *Williston (Rev. Ed.), Vol.* 2, *Sec.* 412, p. 1180:

" * *. * a right to damages for breach of contract is also assignable and a contract right which was too personal for assignment may, on its breach, give rise to an assignable action for damages."

Little objection could be made on the ground that since the original contract had involved the personal services of the assignor, that the assignment would be invalid because the assignor by the assignment had put it out of his power to render such personal service. That was the situation in *Searcy v. Casualty Co. of America,* 149 *App. Div.* 316, 133 *N. Y. S.* 685, where it was held that the personal service element had been destroyed when the defendant had breached the contract and prevented the personal services from being performed.

I, therefore, think that the present assignment would have been valid and enforceable if made at the time and under the circumstances contended for. This then brings me to the question of fact.

2. The suit, sounding in damages, for breach of contract, had been instituted by Stidham in February, 1940. The alleged assignment was on May 16, 1940. The suit continued to be prosecuted by Stidham in his own name until final judgment. The alleged assignee took no part in any proceedings, and no notice of the assignment was given to the defendant in the suit, or to anyone. After final judgment had been rendered in favor of Stidham he then exercised his ownership of the judgment by having it, on April 9, 1941, marked to the use of George W. Lilly, and Alice R. Cornwell, the present petitioning intervenor. This marking to the use of another is an accepted way in Delaware of transferring title to an existing judgment. Mrs. Cornwell accepted the transfer of the judgment marked to her use on April 9, 1941, by paying the costs then accrued, as is required by Delaware practice. There was still no suggestion of any prior assignment or that Mrs. Cornwell had any right dating from May 16, 1940, the date of the alleged assignment, or of any claim other than arising from the marking the judgment to her use. Mrs. Cornwell recognized the marking of the judgment to her use and that of Mr. Lilly as being the foundation of her claim by issuing an execution with Mr. Lilly on the judgment, on April 10, 1941, and as a consequence of this execution the sum of money is now in Court. There was no indication that Stidham had parted with his beneficial interest in the judgment until many months after the judgment creditors of Stidham had, by their attachments, proceeded against Stidham's interest in the judgment. Four months after the attachments were laid Stidham treated the judgment as his own and marked it to the use of Mr. Lilly and Mrs. Cornwell, and they accepted it as such, as above indicated.

At the hearing the following facts were clearly established by testimony:

Some time prior to the hearing on the present petition to intervene, and shortly after the first suggestion had been made of any assignment to Mrs. Cornwell on May 16, 1940, Mr. Lilly then representing both Mr. Stidham and Mrs. Cornwell, had an interview with the counsel for the attaching creditors and for the Brewery.

In order to convince counsel for the attaching creditors and Brewery of the bona fides of the assignment, and as showing the consideration therefor, Mr. Lilly showed to counsel four notes purporting to be signed by Stidham, in favor of Mrs. Cornwell. These notes were (1) for $2890 dated November 15, 1940; (2) for $75 dated Dec. 13, 1940; (3) for $75 dated Jan. 17, 1941, and (4) for $65 dated Feb. 14, 1941. The notes were produced as constituting an antecedent debt and the consideration of the assignment, yet, curiously, they all bore dates long subsequent to the date of the assignment. At the hearing on the present petition to intervene, both Stidham and Mrs. Cornwell repudiated these notes and said that such notes had never existed. At this hearing George W. Lilly, Esq., no longer counsel for Stidham or Mrs. Cornwell, testified that these said four notes had been delivered to him by Stidham as representing the consideration for the assignment, and that as such he had shown them to the counsel for the attaching creditors and for the Brewery, and then returned them to Stidham. David F. Anderson, counsel for the Brewery, the garnishee, testified that he personally saw the notes, and their existence, in my opinion, is not subject to reasonable question. In the present petition to intervene and at the hearing thereon Mrs. Cornwell relied upon an entirely different series of notes allegedly executed by Stidham in her favor, as follows: (1) Dated Feb. 22, 1940, for $25; (2) dated April 29, 1940, for $113.50, and (3) dated May 16, 1940, for $120.

I clearly conclude from the evidence that the notes originally presented as constituting the consideration for the assignment to Mrs. Cornwell did not, in fact, constitute such consideration. I further conclude that the later series of notes were entirely an afterthought created solely for the purpose of attempting to validate the alleged assignment. With this conclusion when added to the suspicious circumstances of the alleged assignment, and the conduct of the parties, I am irresistably led to the conclusion that the entire transaction of the purported assignment, in all its details, was wholly conceived and executed in fraud.

The petition to intervene by virtue of the purported assignment dated May 16, 1940, is refused.