LEO J. CATALFANO, Plaintiff, v. WALTER J. HIGGINS and MATTHEW J. MURRAY, t/a Olympic Parking Service, Defendants.

(*May* 4, 1962.)

LYNCH, J., sitting.

*Garry G. Greenstein* (of Wahl, Greenstein and Berkowitz) for Plaintiff.

*John P. Brady* (of Metten, Healy and Collins) for Defendants.

Superior Court for New Castle County, No. 1465, Civil Action, 1959.

LYNCH, J.:

Plaintiff's Chevrolet Sedan was stolen on July 20, 1959, while it was in the possession of the defendants, who conduct a "Valet Parking Lot" at the Delaware Park Race Track, Stanton, Delaware. Plaintiff had fire and theft insurance and his insurance carrier paid him his loss, in the amount as claimed.

In the settlement papers it was provided that upon payment of the claim to plaintiff, he, as

"* * * the undersigned hereby assigns and transfers to the said company each and all claims and demands against any other party, person, persons, property or corporation, arising from or connected with such loss and damage and the said Company is hereby subrogated in the place of and to the extent of the amount above named, and the said Company is hereby authorized and empowered to sue, compromise or settle in my name or otherwise to the extent of the money paid as aforesaid."

The sum of $1,940.00 was paid by the carrier to the plaintiff and the settlement papers recited that this amount was the "agreed sound value of the car".

At the trial plaintiff proved the bailment of his car with the defendants and then showed that as of the date the car was stolen it had a market value of about $2,000.00.

At the conclusion of the plaintiff's case defendants moved to dismiss because it appeared from the testimony that plaintiff was not the real party in interest, as required by Rule 17, Rules of the Superior Court, *Del. C. Ann.* That Rule, so far as is pertinent, provides:

"(a) Real Party in Interest. Every action shall be prosecuted in the name of the real party in interest; * * *."

Judge Stiftel, in the case of *Cohee v. Ritchey*, 1 *Storey* 597, 599-600, 150 *A*. 2d 830, 831, said—"* * * This Rule has the force and effect of a legislative enactment. *Associated Transport v. Pusey*, 10 *Terry* 413, 118 *A*. 2d 362, 365. The promulgation of the Rule was tantamount to the legislature itself passing a statute covering the subject. See 10 *Del. Code Ann.* Sec. 561."

In *Cammile, Sr. v. Sanderson*, 9 *Terry* 225, 101 *A*. 2d 316 (Super. Ct. 1954) Judge Carey held, 9 *Terry* at 229, 101 *A*. 2d at 318, that under this Rule "the real party in interest is the one who, by the substantive law, has the right sought to be enforced." At a later point in the same paragraph of his opinion, Judge Carey took occasion to point out that in an action involving damages to personal property, "this right is in the true owner of that property".

When the plaintiff was testifying, he stated that the police called him when his car was recovered by the police. On cross-examination he testified:

"Q You said that the police called you because they thought that you were the owner of the car?

"A That is right, sir.

"Q Were you, in fact, the owner of the car?

"A   No, I wasn't.

"MR. GREENSTEIN: I object

"MR. BRADY: Your Honor, this is preliminary.

"Q   Were you, in fact, the owner of the car at that time?

"A   At the time they found it, no.

"Q   When did you transfer ownership of that car?

"A   Upon settlement with the adjuster.

"Q   You conveyed title to them?

"A   Yes, sir.

"Q   In return for what?

"A   I was compensated for the car.

"Q   How much?

"A   I don't know the exact amount. It was 1900 and some dollars.

"Q   Was it $1,940?

"A   Something like that. It was close to $2,000.

"Q   And that was the claim for damages which you made against them?

"A   That is right."

Furthermore, it was brought out in testimony that the plaintiff had executed and delivered the title to the automobile at the time of settlement and it was held by the insurance company.

Rule 17(a) is, in substance, the same as Rule 17(a), Federal Rules of Civil Procedure, 28 *U.S.C.A.* In their consideration of this Rule, in their work on *Federal Practice and*

*Procedure,* Barron and Holtzoff, in Volume 2, § 482, state at page 19:

"Cases involving subrogation constitute another field in which the real party in interest provision is applied, giving the subrogee a right to sue in his own name. *Thus an insurer who has paid the entire loss to the insured is the real party in interest* entitled to sue a third person who is liable for the loss *and must bring the action in its own name. An insured who has no interest in the recovery cannot sue.* * * *." (Emphasis supplied)

See also Volume 3, *Moore's Federal Practice,* ¶¶17.02, 17.08 and 17.09; *Couch, Cyclopedia of Insurance Law,* Vol. 8, § 2049 where at page 6706 it is stated:

"* * * it has been held, under a statute requiring an action to be brought in the name of the real party in interest, that the insurer, and not the insured, is the real party in interest in an action against the wrongdoer for the destruction of the insured property, at least where the insured has settled * * * by accepting a sum amounting to its damage * * *."

A like statement is to be found in an annotation appearing in 157 *A. L. R.* at page 1247. The Supreme Court of Kansas held in *Ellis Canning Co. v. International Harvester Co.,* 174 *Kan.* 357, 255 *P.* 2d 658, 659, (1953), under a real party in interest statute:

"* * * an insured who has been fully paid for his loss is not the real party in interest, within the meaning of that term as used [in this statute] and hence cannot maintain an action to recover the amount of such loss in his own name for the use and benefit of the insurer. Conversely stated, the rule now recognized and applied is, that under the confronting conditions and circumstances the right of action against the alleged wrongdoer vests wholly in the insurer who, * * *, may, and indeed must, bring the action as the real and only party in interest if one is to be maintained."

In light of the facts brought out in the course of plaintiff's case and the aforecited authorities, I have no alternative but to grant defendants' motion to dismiss.

For what it may be worth, I make the observation that when my attention was first called to the fact that plaintiff had been reimbursed for his loss and the case was before the Court on a subrogation asserted by an insurance company,—this in the course of the pre-trial stage of this case—I made inquiry of plaintiff's attorney as to what his position was on this specific point. Then when defendants' motion was argued I made a like inquiry of plaintiff's counsel; I asked what meaning could be given to Rule 17(a) if I were not to apply the cited Rule to the facts developed in this case.

Plaintiff's counsel contended (1) that *Steenburg v. Braunstein, Inc.,* 6 *Terry* 588, 77 *A.* 2d 206 (Super. Ct. 1950) was authority against granting the motion and (2) that the undertaking by insured in the release and assignment signed by the insured to sue in his name for recovery of the payment made to plaintiff by the insurer operated to preclude Rule 17(a) from being applicable.

Neither arguments are valid. The facts of this case distinguish it from the *Steenburg* case, since there the insurer's payment to the insured was less than insured's loss. Secondly, while Rule 17(a) does permit a person "in whose name a contract has been made for the benefit of another" to "sue in his own name without joining with him the party for whose benefit the action is brought" there was really no contract here between the insurer and the insured, since the release and assignment was not the type of contract envisioned by the language of the Rule as quoted above. Then, too, the excerpt from Barron and Holtzoff, cited *supra*, seems wholly applicable to the case and obviates any doubt as to insured's right to maintain this action. The adoption of the Rule, I have heretofore noted, is comparable to the enactment of a statute. It cannot be held that insured's agreement to bring suit in

his own name for the benefit of the insurer can overcome the Rule, which has the force of a statute.

An Order may be presented carrying into effect the substance of my ruling.

### On Plaintiff's Motion for New Trial

Following the filing of the Court's opinion, dated May 4, 1962, and the entry of the order thereon, plaintiff moved for a new trial, contending (1) that defendants' failure to file a pleading, prior to trial, containing a "specific negative averment, supported by affidavit", as provided by Rule 9(a), raising the issue of "real party in interest" therein, foreclosed defendants from thereafter raising the question, and particularly from moving to dismiss, as defendants did, at the conclusion of plaintiff's case; (2) that the Court erred in granting defendants' Motion to Dismiss, because of the language in the printed proof of loss, requiring plaintiff, as the assured, to bring a suit in his own name for the benefit of the insurer, the Jersey Insurance Company, amounted to a "contract for the benefit of another" which, plaintiff contended, came within that portion of Rule 17(a) which provides "a party * * * in whose name a contract has been made for the benefit of another * * * may sue in his own name without joining with him the party for whose benefit the action is brought; * * *" and (3) that the plaintiff was "the real party in interest within the meaning of Rule 17(a)". I propose to take up and dispose of these contentions in the order as set forth in plaintiff's motion.

### 1.

### TIMELINESS OF DEFENDANTS' MOTION TO DISMISS

Plaintiff lays much stress on the term "capacity" as it appears in the title to Rule 17, and from that argues that the second sentence of Rule 9(a) is controlling; he appears to

equate "capacity" with "real party in interest"; he argues that since the term "capacity" appears in the title of Rule 17 that means capacity and real party in interest have the same meaning and should be read together to determine the full meaning of Rule 17.

■■ A difficulty with this argument is that I can find no ambiguity in Rule 17. A statute or rule of court is not construed by reference to any language except that which appears in the statute or rule, unless there is an ambiguity. This Court, as is considered hereafter, did not adopt paragraph (b) of Rule 17 of the Federal Rules of Civil Procedure, but did retain "capacity" in the title. Such omission created no ambiguity; it evinced no intent on the part of this Court to say that "capacity" and "real party in interest" mean the same thing, hence there can be no resort to a title or to a headnote to a section, or catchword in a rule as an aid in matters of construction, so as to create an ambiguity, *Trader v. Jester*, 1 *Terry* 66, 74, 1 *A.* 2d 609 and see *Terracciona v. Magee*, 53 *N. J. Super.* 557, 148 *A.* 2d 68, 73 (N. J. Super.).

Counsel for defendants properly noted that when this Court adopted Rule 17—from the Federal Rules of Civil Procedure—it did not adopt paragraph (b) of that Rule, as it appears in the Federal Rules. Paragraph (b) of the Federal Rules deals with "Capacity", and by not adopting paragraph (b) of Rule 17 the usual considerations given to "Capacity" by Rule 17(b) F. R. C. P. are no longer to be considered; that paragraph (b) was not adopted, there is nothing now in Rule 17 that deals with capacity. This Court recognizes this contention and adopts it.

Professor Moore's *Federal Practice*, 2nd Ed., Vol. 3, pages 1379 *et seq.*, in discussing capacity under Rule 17(b) F. R. C. P., points out that there is a definite distinction drawn between an enforceable right or interest and "capacity" to sue; that "capacity" is determined by Federal Law whereas whether or not a party has an enforceable right or interest is

determined by the substantive law of the State. The clear-cut distinction between capacity and enforceable right or interest to sue is brought out at many points in Professor Moore's discussion following Rule 17(b). He states at one point (page 1380):

> "Having capacity to sue is not the same as having an enforceable remedy."

And again that while technically a party may have capacity to sue in a Federal Court it could not recover where recovery would not be possible in the State Court (page 1397). Finally he points out that a party plaintiff cannot avail itself of the provision of Rule 17(b) relative to an action to enforce a right unless it is the real party in interest (page 1410).

Plaintiff, in his memoranda in support of his Motion for New Trial, now relies on Rule 12(h) and argues that "real party in interest" is a defense that must be raised before trial; that when defendants did not plead Rule 17(a) as a defense before trial, the plaintiff had, under Rule 12(h), the right to consider that defense waived; plaintiff then argues defendants should not have been permitted to assert the point by the mode they employed—by filing a Motion to Dismiss when all of plaintiff's evidence was in.

I do not regard "real party in interest" as a defense and consequently rule that Rule 12(h) is not apposite to such a contention. The fact that a litigant is not the real party in interest is not a defect in capacity within the meaning and purview of Rule 9(a).

I can imagine instances where a litigant could be the real party in interest and yet lack capacity to sue, as for example a person who has become mentally incompetent or is an infant with a good cause of action, or by the same token that a person could have capacity to sue and yet not be the real party in interest, as in this case, because plaintiff had assigned all his interest in the cause of action before suit was brought.

I regard this premise as acceptable, and Rule 9(a) therefore goes out of the picture and the case simply becomes one of a plaintiff's failure to prove his case. From the complaint it appears that plaintiff alleged he was the owner of the automobile. Defendants' answer put this in issue. The pleadings, therefore, required plaintiff to prove his case, including ownership of the automobile. He can recover only if he was able to and proved he was the owner of the automobile.

The proof showed conclusively that he was not the owner of the automobile, and thus, judgment was properly entered against him.

It was said in *Terry v. Penn. R. R. Co.*, 5 *W. W. Harr.* 1, 8, 156 *A.* 787 (Super. Ct., 1931) that "in a tort action some right or interest in the subject matter of the action must appear in the plaintiff"; here plaintiff had transferred and assigned all his rights in the stolen car to his insurer before suit was brought so he no longer had any "right or interest in the subject matter of the action" at the time suit was brought or the case tried, hence, he could not and did not maintain his burden of proof. I reject plaintiff's arguments under this point.

2.

## WAS PLAINTIFF SUING ON A CONTRACT MADE FOR THE BENEFIT OF ANOTHER?

Judge Carey's determination and the reasoning he adopted in *Cammile v. Sanderson*, 9 *Terry* 225, 228, 101 *A.* 2d 316, 318 (Super. Ct. 1953) is determinative of plaintiff's second argument. Such contract as plaintiff showed there was, noted that plaintiff was a party to it as the insured and Jersey Insurance Company as the insurer. Hence, plaintiff, in bringing suit, was acting for and in the interest of the insured, a party to the contract.

The discussion to be found in Moore, *Federal Practice* ¶17.13, pages 1370-1372 and supplement, and in Barron and Holtzoff, (Wright Ed.), Vol. 2, § 482, p. 9, where it was pointed out that this "provision was inserted as a precautionary measure in order that the 'real party in interest' would not be confined to the person beneficially interested". All show plaintiff's argument to be without merit. Barron and Holtzoff here point out, as did Professor Moore, that "the question who is a real party in interest is governed by the substantive law" and in this instance that there is no third party benefit contract before the Court. I reject plaintiff's arguments under this point.

3.

## IS THE PLAINTIFF "THE REAL PARTY IN INTEREST" WITHIN THE MEANING OF RULE 17(a)?

Plaintiff, in support of his contention that plaintiff is "the real party in interest", argues quite earnestly that since this is a tort case the plaintiff only could and should be permitted to maintain the action and in his name, since tort claims are not assignable, and he cites Judge Christie's unreported decision (*Deseta v. Siple*, C. A. 903, 1960) (of which I was fully aware when preparing the former opinion), in support.

There are no reported cases in this state deciding whether or not a tort claim involving personal property is assignable.

Judge Christie said in *Deseta v. Siple*:

"Delaware takes the common law approach to subrogation. Under this approach, an insurance carrier which becomes subrogated to the rights of the insured after payment of damages may sue and recover in the name of the insured. *Ierardi v. Farmers' Trust Co. of Newark*, 4 *W. W. Harr.* 246,

151 *A*. 822 (Superior Court, 1928). See cases collected in 96 *A. L. R.* 864.

"Superior Court Rule 17(a) requires that a suit be brought in the name of the real party in interest. The adoption of this Rule in 1948 did not change the established custom as to subrogation in Delaware.[1] Under the common law approach a suit brought in the name of the insured has continued to be regarded as a suit brought in the name of the real party in interest, whether or not subrogation exists as to all or a part of the claim.[2]

"The theory behind the common law approach to subrogation is that the 'real rights' of the insured are being litigated, even though some other person may be entitled in equity to the whole or a part of the funds recovered. *Ierardi v. Farmers' Trust Co. of Newark, supra.*

"A practical justification for the continuation of the practice is found in the settled policy to exclude from trial as prejudicial any mention of insurance. See *Steenburg V. Braunstein, Inc., supra.*"

I reluctantly find myself in apparent disagreement with Judge Christie but I hope ultimately it will appear there is no real disagreement.

The ruling I am about to state will be best understood if all the pertinent facts are set out fully. As the trial of this case opened, the following colloquy took place between counsel and the Court:

"MR. BRADY: Your Honor, if I may, at this point, the Complaint, as originally stated, shows a claim for damages

---

[1] This statement may be open to question in light of the Supreme Court's holding in *Italo Petroleum Corporation v. Hannigan,* considered post.

[2] This depends on the nature of the claim involved and statutes pertaining to survival of causes of action.

of the sum of $2,000. Now, evidence will be presented at the trial to indicate that the automobile in this case was subsequently recovered, thus, mitigating the damages and reducing the amount originally stated. I would like Mr. Greenstein, at this time to state the amount of damages which he is now claiming.

"THE COURT: Proceed, Mr. Greenstein.

"MR. GREENSTEIN: Well, Your Honor, the amount that we are claiming is the amount of the claim, minus the salvage value.

"MR. BRADY: My request is for the stated amount of damages. What was the reduction that will be made?

"MR. GREENSTEIN: $960.

"THE COURT: Was that the salvage?

"MR. GREENSTEIN: Yes.

"THE COURT: We have $2,179, minus $960. That is $1,219, now the amount claimed."

Plaintiff's expert witness on the value of plaintiff's stolen car testified that when plaintiff's car was stolen it had a value "in the neighborhood of $2,000". He tended to limit his testimony by referring to the sale of another car of the same model, about which he knew, but with more mileage, stating he was aware it had sold for $1,900. This same expert testified that when plaintiff's car was recovered it had been sold for $960, less the Pennsylvania State Tax of $38.40, or a net of $921.60.

It thus appears that the full extent of plaintiff's interest in the stolen vehicle amounted to only $1,219, and this is in accordance with the figures he gave at the colloquy, *supra*, page 9, as the trial got under way.

Before his car was recovered and before he filed suit, plaintiff, for the sum of $1,940, had transferred his car and his cause of action against defendants to the insurer, thereby transferring and surrendering all of his rights in the car or in the cause of action to the insurer, thus, leaving him without any interest whatsoever in the law suit; see *Terry v. Penn. R. R. Co., supra.*

*Ierardi v. Farmers' Trust Co. of Newark, supra,* it is to be noted, involved an action for personal injuries. There is a distinct line of demarcation, see annotation 57 *A. L. R.* 2d at p. 611, between cases involving personal injuries and those wherein property damages are involved. There is no doubt but that a right of action involving personal injuries is not assignable; *Id.* it seems otherwise, however, where the right of action relates to damage to real or personal property, 6 *C. J. S.*—Assignments—§ 34, and 4 *Am. Jur.*—Assignments—§§ 30-33. It is stated generally that where there is a statute making an action *ex delicto* for injury to property survivable, such right of action is assignable, 6 *C. J. S.*—Assignments—§ 30 and 4 *Am. Jur.*—Assignments —§§ 31-32.

It is said, 4 *Am. Jur.*—Assignments—at page 254:

"* * * Although at common law no action *ex delicto* in which the appropriate plea was 'not guilty' survived, the early statute of 4 *Edw. III* chap. 7, gave a remedy to the representatives of a decedent for a trespass to the personal estate, and survivorship was, by a later statute (3 & 4 *Wm. IV.* chap. 42), prescribed for actions *ex delicto* for injuries to real property. *Ultimately these statutes gave rise to the principle that choses in action for torts which arise from wrongs causing injury to* real or *personal property*, or from torts by which an estate, real or personal, has been injured, diminished, or damages, *may be assigned.* * * *"* (Emphasis supplied)

See also Annotations 157 *A. L. R.* 1261 and 57 *A. L. R.* 2d 603.

In this latter Annotation reference is again found (pp. 605 and 619) to the statute, 4 *Edward III*, chapter 7[3], enacted in 1330. At page 605 the following statement is to be found:

" 'At common law' (meaning here, prior to English statutes affecting the matter), no chose in action was assignable, the assignment of a mere tort claim being without support even in equity. This situation, according to the statements encountered in various texts, and generally also in the American cases, was at an early time, specifically in the year 1330, altered by the indirect effects of the statute, 4 *Edward III*, chapter 7, by the terms of which enactment executors were given the right to recover damages for 'Trespasses done to their Testators, as to the Goods and Chattels of the same Testators carried away in their life.' The same rights of action were later given to administrators. These survival provisions, it is said, received a liberal construction and were deemed to cover the survivability not merely of actions in trover, which clearly were within their language, but other actions for trespasses to personalty as well. As to the additional matter of assignability, the effect of the statutes is traced to the fact that the personal representatives of a decedent were viewed

---

[3]Judge Rodney in *Sobolewski v. German,* 2 *W. W. Harr.* 540, 544, *et seq.,* 127 *A.* 49, 51 (Super. Ct. 1924) discusses which English Acts have been adopted in light of Article 25 of the 1776 Constitution, which read:

" 'The common law of England, as well as so much of the statute law as has been heretofore adopted in practice in this state, shall remain in force, unless they shall be altered by a future law of the Legislature; such parts only excepted as are repugnant to the rights and privileges contained in this Constitution, and the declaration of rights, * * * agreed to by this convention.' "

Judge Rodney referred to the compilation of the English Acts made by the Supreme Court of Pennsylvania "as had been adopted in practice". See 3 *Binney* (Penna.) at page 599. At page 610 it is noted that the statute of 4 *Edw. III,* chap. 7, had been adopted in Pennsylvania. In light of Judge Rodney's comments, 2 *W. W. Harr.* 545, 127 *A.* 51 concerning "the similarity of the early practice in Delaware and Pennsylvania", I assume this ancient statute was among those "adopted in practice in this state," 1776 *Const.,* Art. 25. See also *Lynch v. Hill,* post.

in the light of assignees, the quality of assignability being therefore attributed to the causes of action.

*"The theory that a cause of action is assignable if it will survive to the personal representatives of the owner has gained very wide acceptance in this country.* A New York case of more than a century ago asserts that 'the power to assign and to transmit to personal representatives are convertible propositions.' The same idea appears in other American cases in various forms.

*"Accordingly, the rule which obtains in most of our states, aided usually by the fact of the English statutes above referred to having become a part of the local common law, but sometimes grounded also in survival statutes* in themselves sufficient for the purpose under prevailing theories, and in a few instances directly provided for by statute, *is that a tort claim for damages to personal property is fully assignable."* (Emphasis supplied)

The question was considered at length and a number of cases and authorities reviewed in *Zabriskie v. Smith*, 13 *N. Y.* 322, 332 (N. Y. Ct. of Appeals 1855), and at p. 333 the New York Court referred to the statute 3 *Edw. III*, ch. 7, and how it changed the rule as to assignments of actions involving torts affecting personal property.

One such case cited by the New York Court was *North et al. v. Turner et al.*, decided by the Pennsylvania Supreme Court in 1823 and reported in 9 *Serg. & R.* 244, 249. That Court held an assignment of a tort action, involving a trespass to personal property "survives to the personal representative, by the statute 4 *Edw. III*, c. 7, which clearly shows that such a cause of action is separable from the person of the owner; * * *."

If there be any doubt whatsoever of the adoption of the statute 4 *Edw. III*, c. 7, at the time of statement, see 1776 Const., Art. 25, as previously discussed, it is only necessary

to show that since 1829, see Vol. 7 *Del. Laws* at page 477, it has been the statutory law of this state that causes of action pertaining to personal property "survive to and against the executors or administrators" of deceased persons. Our present statute, 10 *Del. C.* § 3701, in force when the assignment in this case was made, clearly provides for survival of "all causes of action" except a few exceptions specifically noted.

It seems clear to me that sufficient has been said in some decisions of this Court to warrant the statement that the statute 4 *Edw. III*, ch. 7, was "adopted in practice in this state" by Article 25 of the 1776 Constitution.

In *Hollett v. Wilm. Trust Co.*, 6 *W. W. Harr.* 170, 173, 172 *A.* 763, 764 (Super Ct. 1934) the late Chief Justice Layton observed:

"The ancient maxium of the common law, *actio personalis moritur cum persona*, once applicable alike to contractual and delictual duties and obligations, at the time, had been with respect to the survival of contractual rights and duties, narrowed greatly by natural forces, judicial reasoning and decision, at work in the common law, but in the field of tort, the first relaxation of the maxim was accomplished by the statute 4 *Edw. III*, c. 7, giving executors a remedy where there was an asportation of, or damage done, to chattels of the testator; but it is to be noted that the statute did not give the executor a right of action for injuries to the person or character of the testator, nor a right of action against executors. * * *"

At a further point in his opinion this great jurist, in considering a reference to *Chitty on Pleading*, noted (6 *W. W. Harr.*, at 174, 172 *A.* at 764):

"The authority for these conclusions is *Hambly v. Trott, supra* [*Cowp.* 371]. This great case, decided by Lord Mansfield in 1776, held that the action of trover did not survive against the representative of the deceased converted of chat-

tels. This case is of such moment that it has been said, and *it is doubtless true, that in a common law jurisdiction the law with respect to survivability of actions for torts is to be determined by a reference to the doctrine stated by* Lord Mansfield, *the statute of Edw. III* and the statutory enactments of the state. Note to *Boor v. Lowrey* (103 *Ind.* 468, 3 *N. E.* 151), 53 *Am. Rep.* 530. See, also, *R. C. L. Abatement and Revival.*" (Emphasis supplied)

Judge Rodney, while a member of this Court (1942), said, in *Industrial Tr. Co. v. Stidham,* 3 *Terry* 339, 344, 33 *A.* 2d 159 (Super. Ct. 1943), of the assignability of a cause of action:

"The question of assignability largely depends upon the circumstances as to whether the cause of action would survive and pass to the personal representative."

Former President Judge Richards of this Court made like observations in 1927 in *Garford Motor Truck Company v. Buckson et al.,* 4 *W. W. Harr.* 103, 107, 143 *A.* 410 (Super. Ct. 1928); and *Continental Guaranty Corporation v. People's Bus Lines,* 1 *W. W. Harr.* 595, 604-605, 117 *A.* 275 (Super. Ct. 1922).

■■ I regard these statements as supporting my holding that if a cause of action survives and passes to the personal representative of a decedent it is assignable and since the trespass to plaintiff's car, in the case before me, was clearly survivable, it was assignable and plaintiff, by his own act, did assign all of the right, title and interest in the car and cause of action to his insurer and thereby deprived himself of all interest.

I point out that in *Italo Petroleum Corporation v. Hannigan,* 1 *Terry* 534, 541, 14 *A.* 2d 401 (Sup. Ct. 1940), it was held that the right of an assignor or the assignee to maintain suit on a chose in action *relates to the remedy of the parties,—* that is to say it is a matter of procedure and, hence, comes

within the purview of our Rules. For that reason it seems reasonable to consider that Rule 17(a) is probably applicable and determinative of the question before me.

Going back now to Judge Christie's unreported decision of *Deseta v. Siple*, of which I previously observed that I did not consider we are in "real disagreement", I don't find that Judge Christie was asked to consider the material I have referred to and included in this opinion. Judge Christie's ruling in that cited case was not that a tort involving damages to personal property was not assignable, but involved a ruling on an interrogatory, the answer to which would have brought mention of insurance into the case.

I am not unmindful of Judge Caleb R. Layton, III's observations in *Steenburg v. Braunstein, Inc.*, 6 *Terry* 588, 77 *A.* 2d 206 (Super. Ct. 1950), where 6 *Terry* at p. 591, 77 *A.* 2d at p. 208 he declined to exercise his discretion, given by Rule 21, to add the insurer in that case as a party plaintiff in light of "the settled policy of our Courts * * * to exclude from the trial of a case any mention of the fact that a Defendant is insured". See also *Cammile v. Sanderson*, 9 *Terry* 225, 229, 101 *A.* 2d 316, 318 (Super. Ct. 1953) per Carey, J.

If there be any conflict between what I hold here and the cited cases, I regret my inability to be convinced that I should disregard that which sems to me so clear and logical, and in keeping with the precise directions of Rule 17(a) for considerations that are now unrealistic in light of the fact that practically everybody today, by reason of statutory necessity, is insured.

I have given much thought to what the late Chancellor Harrington said in *Lynch v. Hill*, 24 *Del. Ch.* 86, 95, 6 *A.* 2d 614, 618 (Ct. Ch. 1939):

"* * * Carefully considered cases in this court should not be disregarded without good reason, * * *."

See also the comments of the courts in *Biddle v. Board of Trustees*, 3 *W. W. Harr.* 425, 430, 138 *A.* 631, 633 (Super. Ct. 1927)—per Pennewill, C. J.,—and *Green v. Loper*, 6 *Terry* 117, 124, 67 *A.* 2d 856, 859 (Super. Ct. 1949), and have concluded that it is my duty "in the interest of justice and proper administration of the law" to take the course I have and to hold claims for torts involving personal property are assignable because our statute has for so long regarded them as surviving to personal representatives. If I am wrong in the conclusion reached and here enunciated, the Supreme Court can and will hold that I erred.

I, therefore, conclude that the cause of action which the plaintiff Catalfano acquired by reason of the illegal conduct on the part of the defendants was assignable and effect should be and must be given, as a matter of substantive and procedural law, to Catalfano's having executed and delivered the instrument (Plaintiff's Exhibit #1) by the terms of which he assigned and transferred to his insurer "each and all claims and demands against any other person * * * arising from or connected with such loss and damage"—specifically as otherwise resulted therein, and that plaintiff is not the "real party in interest" within the meaning of Rule 17(a).

I think this disposes of all arguments advanced by plaintiff in his motion for a new trial. An order may be presented providing that such motion for a new trial is denied.