**John PUMA, Plaintiff,**

v.

**J. Willard MARRIOTT et al., Defendants.**

**Civ. A. No. 3275.**

United States District Court
D. Delaware.

Jan. 3, 1969.

Ernest S. Wilson, Jr., Wilson & Lynam, Wilmington, Del., Stanley L. Kaufman and Shephard S. Miller, Kaufman, Taylor, Kimmel & Miller, New York City, for plaintiff.

Henry M. Canby, Richards, Layton & Finger, Wilmington, Del., and John J. Wilson, Whiteford, Hart, Carmody & Wilson, Washington, D. C., for defendants, Don G. Mitchell, James M. Johnston and Marriott Corp.

David F. Anderson, Potter, Anderson & Corroon, Wilmington, Del., and Burton A. Schwalb, Arent, Fox, Kintner, Plotkin & Kahn, Washington, D. C., for defendants, J. Willard Marriott, Alice S. Marriott, J. Willard Marriott, Jr., Milton A. Barlow, Richard E. Marriott, Woodrow

D. Marriott, Russell S. Marriott and John S. Daniels.

## OPINION

CALEB M. WRIGHT, Chief Judge.

This is an action for damages by plaintiff John Puma against the Marriott Corporation (Marriott) and several of its directors and officers based on alleged violations of federal securities laws and alleged breaches of common law fiduciary obligations. Plaintiff sues on his own behalf, on behalf of all other Marriott stockholders, and derivatively on behalf of Marriott. The claims purportedly arise out of transactions surrounding Marriott's acquisition (through stock purchase or merger) of six corporations owned by individuals in the Marriott family. Plaintiff alleges, inter alia, fraud, the use of false and misleading proxy statements, and unjust enrichment of the various defendants, in violation of § 17(a) of the Securities Act of 1933 (1933 Act), 15 U.S.C. § 77q(a), §§ 10(b) and 14(a) of the Securities Exchange Act of 1934 (1934 Act), 15 U.S.C. §§ 78j(b) and 78n(a),[1] SEC Regulation 10b–5, 17 C.F.R. 240.10b–5, SEC Regulation 14a–9, 17 C.F.R. 240.14a–9, and common-law fiduciary obligations. Jurisdiction for the statutory claims is based on 15 U.S.C. § 77v(a) and 15 U.S.C. § 78aa; jurisdiction for the common law violation is asserted to be pendent and, at the same time, based on diversity of citizenship.[2]

Defendants J. Willard Marriott, Alice S. Marriott, J. Willard Marriott, Jr., Milton A. Barlow, Richard E. Marriott, Woodrow D. Marriott, Russell S. Marriott, Don G. Mitchell, and James M. Johnston now move the Court to quash service and to dismiss the action for lack

---

1. Both plaintiff and defendants have miscited and jumbled these statutory references in their briefs. Plaintiff, in addition, has improperly cited in its Amended Complaint one of the jurisdictional statutes upon which it relies (citing 15 U.S.C. § 77q(a) instead of 15 U.S.C. § 77v(a)). The citations given here are believed to be the correct ones relied upon by the parties.

2. Plaintiff raises the common law claim once in Count I of the Amended Complaint, alleging pendent jurisdiction there, and a second time in Count II, alleging diversity. Count II's redundancy is considered below.

of personal jurisdiction.[3] This is the second request for such relief by these parties, the Court having dismissed without prejudice the prior motions. See this Court's Order of October 9, 1967.

One preliminary matter concerns the Court. On December 28, 1963, defendant James Johnston died. Formal Suggestion of Death was filed in this proceeding on November 27, 1968. Johnston, by his attorney, now moves for dismissal on the ground that all claims herein abate at death.

As to the federal claims asserted here, Johnston is not entitled to dismissal. It is well established that, in the absence of a statutory pronouncement regarding the survivability of an action, the federal common law will be applied. Mills v. Sarjem Corp., 133 F.Supp. 753, 761 (D.N.J. 1955). Accordingly,

> "It has grown to be the established law that the right of action in all personal actions does not die with the person but the true test is whether the injury upon which the cause of action is based is one which affected property rights or affected the person alone. In the former case, the action survives while in the latter, it does not." Armstrong v. Allen B. Du Mont Laboratories, 137 F.Supp. 659, 663 (1955).

These federal claims for damages, based as they are on unjust enrichment, fall into the category of actions affecting property rights. Accordingly, they do not abate. See 3 Loss, Securities Regulation, pp. 1817–18 (1961 Ed.).

The survivability of the common-law claim for breach of fiduciary obligations depends on state law. See 1A Moore, Federal Practice, § .305[3], p. 3056. The parties having made no arguments to the contrary,[4] this Court assumes that the law of Delaware applies.

10 Del.C. § 3701 governs this claim:

> "All causes of action, except actions for defamation, malicious prosecution, or upon penal statutes, shall survive to and against the executors or administrators of the person to, or against whom, the cause of action accrued. Accordingly, all actions, so surviving, may be instituted or prosecuted by or against the executors or administrators of the person to or against whom the cause of action accrued."

While no Delaware case specifically holds that a claim based on breach of fiduciary obligations by which a corporate officer enriches himself survives the officer's death, the statute clearly covers such a situation.[5] Such a reading is consistent with the approach taken in other states. See 1 Am.Jur.2d, § 81, p. 108.

Accordingly, all claims herein survive Johnston's death. Since no attempt has been made, to the Court's knowledge, to substitute the estate of Johnston as a party,[6] the Court need not rule at this point on the propriety of any such substitution.

Turning now to the question of personal jurisdiction over the moving defendants, the disposition of the pending motions depends, in the final analysis, on the

---

3. The title of one brief suggests that defendant John S. Daniels also seeks the same relief. However, the Court finds no evidence in the record that Daniels was ever served with process or that Daniels has ever filed a written motion. Unless these two conditions have been met, the Court cannot grant relief to Daniels. Accordingly, the Court will proceed as if Daniels were not party to these motions until the parties adequately demonstrate the contrary.

4. Notwithstanding the importance of this matter, neither party has filed briefs nor raised any arguments with regard to Johnston's motion to dismiss on account of abatement.

5. For a general discussion of § 3701 and Delaware abatement law, see Catalfano v. Higgins, 182 A.2d 637, 643–645 (Del. Super.1962). See also Hollett v. Wilmington Trust Co., 172 A. 763 (Del.Super. 1934).

6. Under Federal Rule 25(a), a motion for substitution must be made within 90 days after the death is suggested upon the record. This period has not yet run.

validity of the extraterritorial process used by plaintiff in this action. Each moving party has been served with process outside the territorial limits of this forum pursuant to § 27 of the 1934 Act. Defendants contend that such service is invalid under the 1934 Act and that, even if it is valid under the 1934 Act, the jurisdiction acquired thereby cannot extend to claims under the 1933 Act or under common law. Accordingly, they move for dismissal of all claims or, in the alternative, all but the 1934 Act claims.

Section 27 of the 1934 Act, 15 U.S.C. § 78aa, reads in relevant part:

"Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder * * * may be brought [in the district wherein any act or transaction constituting the violation occurred] * * * and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found."

■ The threshold question is whether plaintiff has alleged in his Amended Complaint any act or transaction occurring within Delaware which constitutes a violation of the 1934 Act. In determining this question, the Court need not look beyond the four corners of the Amended Complaint. Levin v. Great Western Sugar Co., 274 F.Supp. 974, 979 (D.N.J.1967).

■ Focusing on the alleged violation of § 14(a) of the 1934 Act, 15 U.S.C. § 78n(a), plaintiff asserts that defendants solicited the votes of Marriott stockholders by means of a proxy statement which contained statements that "were false and misleading with respect to material facts, and which omitted to state material facts necessary in order to make the state-

ments therein not false and misleading. * * * " Amended Complaint, ¶¶ 28, 29. Plaintiff further alleges that all of the defendants permitted their names to be used in said solicitation of proxies and participated in and otherwise aided and abetted the implementation of the plan to unjustly enrich themselves, Amended Complaint, ¶¶ 27, 28(b). Finally, plaintiff alleges:

"The following acts and transactions constituting the violation, among others, occurred in the District of Delaware:

(a) the mailing and dissemination of the proxy statement to Marriott stockholders residing in the District of Delaware for the purpose of soliciting their approval of the transactions;

(b) the filing of the agreement of merger in the District of Delaware upon which event the merger became effective in the said District." Amended Complaint, ¶ 40.

Defendants apparently do not contest that the Amended Complaint on its face states a cause of action under § 14(a).[7] However, they contend that neither act alleged in ¶ 40 of the Amended Complaint is sufficient to permit service under 15 U.S.C. § 78aa. The Court cannot agree. The law does not require that the violative act or acts form the core of the claim. All that is required is but one act within the forum district which represents more than an immaterial part of the allegedly illegal events. See Dauphin Corporation v. Redwall Corporation, 201 F.Supp. 466, 469–470 (D.Del.1962); Schneider v. Sears, 265 F.Supp. 257, 261 (S.D.N.Y. 1967).

■ By this standard, the sufficiency of the act of mailing proxies into

7. Defendants do argue that, as to three transactions involving acquisition by stock purchase, no § 14(a) or Rule 14a–9 claim is stated since stockholder approval was not necessary. Aside from the fact that this argument does not go to the question of whether *any* § 14(a) or Rule 14a–9 claim is stated (there being three other acquisitions clearly requiring stockholder ap-

proval), defendants' point has no merit. As plaintiff points out at pp. 7–8 of his Brief, the proxy statement did in fact require stockholder approval of the stock purchase acquisitions. And the considerations which led to denial of relief in Barnett v. Anaconda Co., 238 F.Supp. 766 (S.D.N.Y.1965)· are inapposite here.

Delaware does raise a question. Zorn v. Anderson, 263 F.Supp. 745, 748 (S.D. N.Y.1966) makes it clear that such an act can, as a general rule, constitute grounds for § 78aa venue and process. However, in this case, the number of proxies solicited in Delaware was very small in relation to the whole of the solicitation, raising the question of whether the act bears any material importance to the overall scheme. Indeed, if this were the only act alleged as having occurred in Delaware, this Court would be reluctant to sustain venue and process under § 78aa. However, the additional act of filing the merger agreement in Delaware, without which the merger could not have been effective, 8 Del.C. § 251, when considered along with the proxy solicitation, is enough to support jurisdiction in this Court. Cf. Dauphin Corporation v. Redwall Corporation, supra, 201 F.Supp. at 469–470.

Accordingly, plaintiff has met the criteria of 15 U.S.C. § 78aa and the use of extraterritorial process to acquire jurisdiction over the defendants is valid insofar as the claims under the 1934 Act are concerned.

Does the Court's jurisdiction extend beyond those claims to the 1933 Act claim? The law is clear that it does. Once plaintiff states a claim under the 1934 Act, the broader venue and special process provisions of that Act apply to claims arising under both Acts. Dauphin Corporation v. Redwall Corporation, supra, 201 F.Supp. at 469; Dauphin Corporation v. Davis, 201 F.Supp. 470, 472 (D.Del.1962); Zorn v. Anderson, 263 F. Supp. 745, 747 (S.D.N.Y.1966); Thiele v. Shields, 131 F.Supp. 416, 420 (S.D. N.Y.1955).

The question of whether this Court has personal jurisdiction over the parties with regard to the common-law claim for breach of fiduciary obligations is more difficult. There is little doubt that a Court has the power to consider the subject matter of the common-law

claim along with the federal claims, arising as it does out of a "common nucleus of operative facts." United Mine Workers of America v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). See also Knuth v. Erie-Crawford Dairy Coop. Assoc., 395 F.2d 420, 426–427 (3d Cir. 1968) (broad construction of Gibbs). However, when personal jurisdiction over defendants with regard to the federal claims is based on extraterritorial service provided for by special statute, does that personal jurisdiction extend to non-federal pendent claims?

Notwithstanding the body of authority to the contrary, see 2 Moore, Federal Practice, ¶ 4.42[1], n. 44, this Court adopts the view shared by Professor Moore and the Second Circuit that extraterritorial sevice is valid as to pendent claims. See 2 Moore, ¶ 4.42[1], n. 43 and text accompanying; Schwartz v. Eaton, 264 F.2d 195 (2d Cir. 1959); Kane v. Central American Mining & Oil, Inc., 235 F.Supp. 559, 567–568 (S.D.N.Y. 1964). Judicial economy and the convenience of the parties are best served by consideration of all legal theories arising from the single set of operative facts. Once those facts are legitimately before the Court, the entire case which they raise should be present for decision. The use of extraterritorial process, when sanctioned by law, in no way discounts the legitimacy of that presence.

In light of the foregoing, this Court has jurisdiction over the moving defendants with regard to all federal claims and the pendent common-law claim.[8]

There remains for consideration Count II of the Amended Complaint. By plaintiff's own admission, Plaintiff's Brief, p. 24, the common-law claim in Count II is, in substance, identical to the common-law claim asserted in Count I. Jurisdiction for Count II, however, is based on diversity of citizenship and, because the presence of defendant Mitchell would destroy complete diversity, plaintiff excludes Mitchell from Count II.

8. In terms of the Amended Complaint, the Court has jurisdiction to consider all matters set forth in Count I.

**1122**

Federal Rule 12(f) permits the Court, on its own initiative, to strike from any pleading matter which is redundant. Such relief is not favored, however, unless the presence of the surplusage will prejudice the adverse party. 2A Moore, ¶ 12.21[2], p. 2431. Here, the Court can foresee no prejudice from the continued presence of Count II. Accordingly, the Court will not strike that provision from the pleadings at this early stage of the proceedings.

Submit order in accordance herewith.