In the Matter of **PENN CENTRAL TRANSPORTATION COM-PANY, Debtor.**

Petition of **DETROIT BANK AND TRUST COMPANY, Liqui-dating Trustee.**

No. 70–347.

United States District Court,
E. D. Pennsylvania.

Jan. 4, 1972.

Blank, Rome, Klaus & Comisky by Gilbert Stein, and Goncer M. Krestal, and Eugene Anderson, Carl Helmetag, Jr., and James Howard, Philadelphia, Pa., for the Trustees, Penn Central Transportation Co.

Dechert, Price & Rhoads, by Norma L. Shapiro, Philadelphia, Pa., for Penn. Central Co.

Farage & Shrager, by Donald J. Farage, Philadelphia, Pa., for Penn Central Co.

Ballard, Spahr, Andrews & Ingersoll, by Richardson Blair, and Alan Fellheimer, Philadelphia, Pa., for Girard Trust Bank.

Dilworth, Paxson, Kalish, Levy & Coleman, by David Pittinsky, Philadelphia, Pa., for Irving Trust Co.

Fox, Rothschild, O'Brien & Frankel, by Nochem S. Winnet, Philadelphia, Pa., for First National City Bank of New York.

Sullivan & Worcester, by Joseph Auerbach, Boston, Mass., and Tate & Ervin, by Spencer Ervin, Jr., and W. Bourne Ruthrauff, Philadelphia, Pa., for the Trustee, New York, New Haven & Hartford Railroad.

Morgan, Lewis & Bockius, Philadelphia, Pa., for The Fidelity Bank.

Kelley, Drye, Warren, Clark, Carr & Ellis by Robert L. Crawford, New York City, for Manufacturers Hanover Trust Co., Bankers Trust Co., Irving Trust Co., and The Fidelity Bank.

Duane, Morris & Heckscher by Michael M. Baylson, Philadelphia, Pa., for Bankers Trust Co. and New England Merchants National Bank of Boston.

Amram, Hahn & Sundlun, by Bardyl Rifat Tirana, Washington, D. C., for Executive Jet Aviation, Inc.

Vorys, Sater, Seymour & Pease, by Thomas Ridgley, Columbus, Ohio, for employees of Executive Jet Aviation, Inc.

Wachtell Lipton, Rosen & Katz, by Leonard Rosen, New York City, for the Pennsylvania Co.

Miller, Canfield, Paddock & Stone, by Gilbert E. Gove, and Peter Thurber, Detroit, Mich., for Detroit Bank & Trust Co.

Richards, Layton & Finger, by Richard J. Abrams, Wilmington, Del., for Bruce Sundlun.

Pitney, Hardin & Kipp, by John A. Boyd, Newark, N. J., for National Newark & Essex Bank.

Davis, Polk & Wardwell, by Douglas M. Galin, New York City, for Morgan Guaranty Trust Co.

## MEMORANDUM

FULLAM, District Judge.

The petitioner, Detroit Bank and Trust Company, liquidating trustee, seeks approval of the sale of the Debtor's interest in Executive Jet Aviation, Inc. and its subsidiaries ("EJA"). The Debtor, through its subsidiary, American Contract Company ("ACC"), has equitable ownership of 659,450 shares of EJA's capital stock and of debt obligations of EJA totalling more than $21,000,000. Legal title to the stock and debt obligations is held by the petitioner under a trust agreement with ACC.

Petitioner became trustee as a result of an order of the Civil Aeronautics Board which required the Debtor to place its interest in EJA in an irrevocable voting trust and to divest itself of all interest in EJA by March 1, 1971. Since then, the CAB has afforded petitioner additional time to accomplish the divestiture.

By a "Purchase Agreement" dated March 31, 1971, and amended August 31, 1971 (exhibit 7 to the affidavit of Harry C. Pratt), petitioner agreed to sell ACC's interest in EJA to Bruce G. Sundlun and Robert L. Scott, Jr. The agreement is conditioned on approval of the CAB, of the Debtor's Trustees and of this Court. By Order 71–11–51, dated November 12, 1971, the CAB approved the transaction subject to the approval of this Court.

The agreement provides that Sundlun and Scott will pay $950,000 for the Debtor's debt and equity interest in EJA.

The agreement also requires the Debtor's Trustees and ACC to release all claims against EJA or its subsidiaries. Likewise, EJA and its subsidiaries must release any claims they may have against the Trustees or ACC.

A hearing was held on the petition on December 21, 1971. At the hearing, no objection was raised to the purchase price. Penn Central Company, the parent of the Debtor, raised some questions as to the disposition of the proceeds of the sale. However, these problems need not now be resolved since it appears that all parties agree that, for the time being, the proceeds of the sale may be deposited with petitioner subject to further order of this Court.

The only substantial issue presented in the present petition is the effect of this transaction on claims asserted by Penn Central and others in certain actions which have been consolidated for pretrial proceedings before Chief Judge Joseph S. Lord, III of this Court at M.D.L. Docket No. 56.

Penn Central, its shareholders, ACC, and the Debtor's Trustees, are all possible claimants, and may be able to assert claims in the following categories:

1. Direct claims against any corporation or individual, including past and present directors and officers of EJA, who had dealings with EJA to the detriment of the claimants.

2. Direct claims against EJA and its subsidiaries.

3. Derivative claims asserting the rights of EJA and its subsidiaries against various individuals or corporations.

The first category presents no problem since all parties agree that this transaction would have no effect on the claim of any party asserted in his own right against anyone, other than EJA itself.

Nor does any problem of substance arise with respect to the second class of claims. While PCC is satisfied that the direct claims it may have against EJA would not be affected by this transaction, it does assert that the Debtor's Trustees should receive additional consideration for the release of the Debtor's and of ACC's claims against EJA. In reality, this objection amounts to an assertion that the purchase price is inadequate. However, from the outset the releases have been an integral part of the proposed transaction because the Debtor is required by the order of the CAB to divest itself entirely of both its equity and its debt interest in EJA. It is uncontradicted that the agreed purchase price reflects a reasoned evaluation by all parties to the transaction, including the Trustees, of the value of the claims to be released and of the value to the Trustees of the releases to be furnished by the Trustees by EJA.

In addition, the value to the estate of the alternatives to the proposed sale must be examined. The only alternative to this sale appears to be liquidation which, at best, will produce $77,000 less for the Debtor's estate than the present sale. At worst, if a certain EJA creditor is successful in establishing a priority for its claim, the sale could be expected to yield slightly less than $100,000. Affidavit of Harry C. Pratt, at 6–7. Therefore, it must be concluded that the proposed sale has the best prospects of maximizing the yield to the Debtor's estate.

The third group of claims are derivative claims asserting rights which belong to EJA and its subsidiaries. EJA, as stated in its Memorandum in Support of the Petition, is willing to assign to the Debtor's Trustees the proceeds of any claims it may have which would be encompassed within the derivative actions asserted at M.D.L. Docket No. 56, with the exception of those claims set forth in an action pending in the Court of Chancery of Delaware: Bruce G. Sundlun and Executive Jet Aviation, Inc. v. Lassiter Aircraft Corporation, et al., Civil Action No. 3350. EJA states that this latter action is to be excepted from the assignment because the purchasers' financing is premised on what is thought

to be the likely prospect of recovery in that action.

Penn Central objects to the exception of the Delaware action from the assignment. It contends that that action presents "the most likely prospect of recovery by EJA" and that the Debtor's Trustees should share in any recovery. Again, this objection amounts to an assertion that the purchase price is inadequate and again, for the reasons previously stated, the assertion must be rejected.

PCC raises a second and more substantial objection to the terms of the transaction. It contends that the assignment of the proceeds of the other claims EJA may have provides inadequate assurance that the full value of these claims will ever be realized. It argues that if only the proceeds are assigned it would appear to be EJA's responsibility to prosecute the claims and it does not seem likely that EJA would have a sufficient stake in the outcome of the actions to prosecute them vigorously.

It may be argued that since the derivative actions on behalf of EJA now pending at M.D.L. Docket No. 56 could not be dismissed without leave of that court, Fed.R.Civ.P. 23.1, some plaintiffs might be found who could continue to prosecute those derivative actions. However, it is difficult to see how the present plaintiffs whose right to bring a derivative suit derives from ACC's interest in EJA could continue to maintain the suit after that interest had been divested. Fletcher, Corporations § 5972, n. 4 (1970).

The solution to this difficulty appears to be to require EJA to assign the choses in action encompassed by the claims asserted at M.D.L. No. 56 (with the exception of the claims asserted in the Delaware action) instead of assigning the proceeds.

No court has passed squarely on the issue of whether the choses in action here would be validly assignable under Delaware law. Therefore, some analysis of the case law is necessary. Under Delaware law the question of assignability depends on whether the action could survive and pass to a personal representative. Industrial Trust Co. v. Stidham, 3 Terry 339, 33 A.2d 159 (1942). By statute in Delaware all actions except those for defamation and malicious prosecution, and those based upon penal statutes, survive to or against a personal representative. Del.Stat.Ann. tit. 10 § 3701 (1953); and under Delaware law an action for breach of fiduciary duty to a corporation survives. See Puma v. Marriott, 294 F.Supp. 1116, 1119 (D.Del.1969). Therefore it appears very likely that a Delaware court would hold that the choses in action in question here are assignable, unless the assignment were champertous or for some otherwise improper purpose. Kenrich Corp. v. Miller, 377 F.2d 312 (3d Cir. 1967). Certainly, in the present situation, such an assignment would not be improper. Therefore, assignment of the choses in action will be required as a condition to the sale.[1]

The parties have agreed that all matters relating to the distribution of the proceeds of sale, allowances of compensation and reimbursement to the petitioner, and the accounting of its stewardship as between the petitioner and the estate of the Debtor, remain open for further disposition by this Court. Jurisdiction over these matters is expressly retained.

---

1. In approving this transaction as representing the best available method of salvaging something from this deplorable situation, this Court is of course not to be understood as expressing any view as to the merits of possible claims arising from the preceding or underlying events.